S & G INC., a Utah corporation, Plaintiff and Appellant,

v.

INTERMOUNTAIN POWER AGENCY, a legal or administrative "project entity" created pursuant to statute, Defendant and Appellee.

No. 940597.

Supreme Court of Utah.

March 11, 1996.

736

Ken Chamberlain, K.L. McIff, Richfield, for plaintiff.

Ronald L. Rencher, Mark Dykes, Salt Lake City, for defendant.

STEWART, Associate Chief Justice:

S & G Incorporated appeals a district court order dismissing with prejudice its claims for relief. S & G's complaint alleged three claims against Intermountain Power Agency (IPA) that arose out of a contract wherein S & G agreed to sell to IPA water rights appurtenant to land S & G owned near Delta, Utah. The district court dismissed S & G's first and third claims, one sounding in contract and the other in tort, on statute of limitations grounds; and on cross-motions for summary judgment the court ruled that S & G had entered into an accord and satisfaction and released the second claim for relief. We affirm.

## I. BACKGROUND

Prior to 1980, S & G owned 228 acres in Millard County, Utah, that included a well used for irrigation purposes and a water right that allowed the use of 5 cubic feet per second from April to October of each year, up to a maximum of 2,140 acre feet each season. On July 22, 1980, S & G and IPA entered into a "Water Right Purchase Contract" which allowed IPA to buy 521 acre feet of water from S & G to be used for municipal culinary purposes. On April 17, 1981, the parties amended the contract to allow IPA to purchase S & G's entire water right and to require IPA to pay $1,750 per acre foot for the first 521 acre feet of water and $875 for each additional acre foot approved for diversion by the Utah state engineer. The amended contract further provided that if the state engineer, or the Utah courts on review of the engineer's decision, failed to quantify the amount of water for diversion, the parties would "presume" a quantity of 4.0 acre feet per acre, or a total of 912 acre feet.

Pursuant to the contract, IPA filed the requisite change application with the state engineer. S & G did not participate in the administrative proceedings related to this application. On September 10, 1984, the engineer set the transferable quantity of water at 775.2 acre feet but indicated that the decision was "interlocutory" and subject to change by subsequent findings of the state engineer or court rulings. On November 5, 1984, S & G contacted IPA, requesting that IPA file a civil suit, pursuant to Utah Code Ann. §§ 73–3–14 to –15 (1980), challenging the state engineer's decision. IPA declined to do so and suggested that S & G could file the suit on its own. On November 9, 1984, the last day on which the suit could be filed, S & G, acting alone, filed a complaint in the Fourth District Court of Millard County, challenging the transferable quantity of water set by the state engineer.

On January 29, 1985, S & G requested that IPA make early payment for the 775.2 acre feet of water approved by the state engineer. In response, IPA sent S & G a "Partial Payment Contract," which was revised and incorporated into a document designated as a "Change Order" on September 18, 1985. The change order (1) confirmed that IPA had paid S & G for a total of 684 acre feet of water and (2) reiterated the language of the amended contract that in the event the courts did not "fix the quantity of water in acre feet approved [by the state engineer,] for change to municipal use, the quantity [would] be presumed to be 912.0 acre feet."

On October 3, 1986, the district court dismissed S & G's suit against the state engineer on the ground that S & G's interest was not within the "zone of interest" that provided it standing for an appeal from the engineer's order. This Court affirmed the district court's decision on the narrower ground that S & G had waived its right to judicial

review of the state engineer's findings by failing to participate in the administrative proceedings relating to the change application filed by IPA. *S & G Inc. v. Morgan,* 797 P.2d 1085, 1087–88 (Utah 1990).

On July 3, 1990, IPA paid S & G the balance due on the 775.2 acre feet of water set by the state engineer. On receiving payment, S & G executed a "Receipt and Release" which stated that it discharged IPA from all claims by S & G except for claims related to IPA's failure to file suit challenging the state engineer's decision.

On March 27, 1992, S & G filed the complaint [1] which is the subject of the present appeal. S & G's first two causes of action alleged that IPA breached its contract by (1) failing to seek judicial review of the state engineer's decision, and (2) failing to pay for the "presumed" quantity of water specified in the contract (912 acre feet). In its third cause of action, S & G alleged a claim of fraud based on the same operative facts as those alleged in the first cause of action.

The district court, on IPA's motion to dismiss, ruled that the first and third claims were barred by the applicable statutes of limitations. The court also granted IPA's motion for summary judgment on S & G's second claim on the ground that there was no issue of material fact as to S & G's having executed an accord and satisfaction of the second claim in the receipt and release document of July 3, 1990, and was entitled to judgment as a matter of law.

██ Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Winegar v. Froerer Corp.,* 813 P.2d 104, 107 (Utah 1991). Because a challenge to summary judgment presents for review only questions of law, we accord no particular deference to the district court's conclusions but review them for cor-

rectness. *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1111–12 (Utah 1991).

We first discuss the issue of accord and satisfaction with respect to S & G's second cause of action and then treat the statutes of limitations issue with respect to S & G's first and third causes of action.

## II. ACCORD AND SATISFACTION

██ S & G alleges that IPA breached the amended contract of April 17, 1981, because IPA did not pay for the full 912 acre feet of water "presumed" to have been sold by S & G under the contract (and reiterated in the change order of September 18, 1985) if neither the state engineer nor the courts fixed the transferable quantity of the water right. S & G contends that because the engineer's decision stated that it was "interlocutory," it did not "fix" the quantity of water that was transferable to IPA. S & G further asserts that because the district court and this Court rejected S & G's challenge of the engineer's decision on procedural grounds, those courts did not reach the merits of S & G's claims and did not fix a transferable quantity of water. For these reasons, S & G asserts that it is entitled to payment for an additional 136.8 acre feet of water at $875 per acre foot as provided in the amended contract.

IPA argues that regardless of whether the engineer fixed the amount of transferable water, S & G's execution of the July 3, 1990, receipt and release constituted an accord and satisfaction. As we find this argument dispositive of the issue, we do not treat IPA's other arguments at length.[2]

██ In *Estate Landscape v. Mountain States,* 844 P.2d 322, 325 (Utah 1992), we detailed the requirements for an accord and satisfaction. Those elements are (1) a bona fide dispute over an unliquidated amount, (2) a payment made in full settlement of the

---

1. This complaint was amended on August 27, 1993.

2. According to IPA's reading of the contract, IPA asserts that the engineer's decision in fact did fix the amount of transferable water. IPA asserts that the term "interlocutory" in the engineer's order merely acknowledged, as did the amended contract, the possibility of a revision of the initial

amount fixed by the engineer, whether subsequently modified by the courts or by a subsequent order of the engineer. That possibility did not, however, mean that the engineer's decision failed to fix the amount of water transferable under the contract. As the engineer's decision now stands, IPA is entitled to only 775.2 acre feet.

entire dispute, and (3) an acceptance of the payment. We treat each of these elements in turn.

 The first element requires two findings: (1) that the dispute is bona fide and (2) that the dispute involves an unliquidated amount. The bona fide dispute element requires "a good-faith disagreement over the amount due under the contract." *Id.* at 326. In this regard, S & G misapprehends the nature of an accord and satisfaction by arguing the legal merits of the underlying positions of the parties. The merits, however, are immaterial if there has been an accord and satisfaction. For a valid accord and satisfaction, a "disagreement need not be well founded, so long as it is in good faith." *Id.* In this case, the differing interpretations of the contract constituted a bona fide dispute. Each party asserted a differing interpretation of the contract as applied to the facts, and S & G has presented no evidence that IPA maintained its position in bad faith.

 As to the requirement that the amount of the claim be unliquidated, S & G reiterates its assertion that the contract clearly sets forth the presumed amount of water at a specified rate for which IPA would be obligated. This argument fails to recognize the true nature of the dispute. The amount presumed in the contract is undisputed, but whether IPA was required to pay for that amount is not. The contract expressly provided for two contingencies. On the one hand, the amount could be the "presumed" amount, and on the other hand, it could be the amount fixed by the engineer or the courts. IPA takes one of those positions, and S & G asserts the other. Where it is disputed that a condition necessary to fix the amount of a debt owed has been fulfilled, the amount is unliquidated. *See* 6 Arthur L. Corbin, *Corbin on Contracts* § 1290(3) (1962).

As outlined in *Estate Landscape,* the second element of an accord and satisfaction is a payment tendered in full settlement of a disputed sum. The receipt and release made clear that payment was tendered and accepted as settlement of the entire claim now set forth in S & G's second cause of action. S & G argues that the receipt and release was not tendered "in satisfaction of the entire dispute" because that document reserved certain claims. The reserved claims purported to preserve contract and tort causes of action based on IPA's alleged violation of its duty to pursue judicial review of the state engineer's decision. Those claims, however, were and are entirely separate and distinct from S & G's second cause of action, which asserted that IPA had simply failed to pay the presumed amount.

 Because a single contract may embody a multitude of claims, "an accord and satisfaction may discharge an entire contract or only a portion thereof if the contract gives rise to several and distinct obligations or liabilities." *Quealy v. Anderson,* 714 P.2d 667, 668 (Utah 1986). This proposition follows from the policy rationale underlying the doctrine of accord and satisfaction, which is to encourage the settlement of claims. If parties were required to settle all claims extant in a given dispute in order to have any settlement at all, the policy of encouraging settlement would be undermined. Common sense and the principle of conservation of societal and judicial resources dictate that parties should be encouraged to settle as many distinct claims as possible, thus narrowing the scope of any subsequent litigation.[3]

 S & G also argues that there was no accord and satisfaction because IPA simply paid the amount that it conceded it owed without providing any additional consideration for the release. Additional consideration, however, is required only when the claim is liquidated and a lesser sum is ten-

---

3. This case does differ somewhat from the traditional "severable" contract presented in many accord and satisfaction cases. The contract between S & G and IPA contemplated a single sum to be paid for a single water right. Nevertheless, S & G alleges that IPA owed, and violated, more than one duty under the contract. Each of these breaches would result in an entirely different formula for assessing the sum owed under the contract and would necessarily be treated separately at trial. Thus, from a policy perspective, encouraging settlement of overlapping but distinct claims is no less important than encouraging settlement of wholly severable claims.

dered. *Estate Landscape*, 844 P.2d at 326; *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1372 (Utah 1980). " '[A]n accord and satisfaction of a single claim is not avoided merely because the amount paid and accepted is only that which the debtor concedes to be due or that his [or her] view of the controversy is adopted in making the settlement.' " *Estate Landscape*, 844 P.2d at 329 n. 4 (alterations in original) (quoting *Marton Remodeling v. Jensen*, 706 P.2d 607, 609 (Utah 1985)).

The final requirement for an accord and satisfaction is the creditor's acceptance of the payment. In this case, S & G, not IPA, prepared the receipt and release. That document clearly purported to satisfy all obligations relating to what is now S & G's second cause of action. Hence, S & G accepted the payment tendered. The district court was correct in holding that S & G and IPA executed an accord and satisfaction on the second cause of action.[4]

### III. STATUTE OF LIMITATIONS ON S & G'S FIRST CAUSE OF ACTION

S & G's first cause of action alleged, "By failing to seek judicial review of the decision of the State Engineer, IPA breached its contractual duty, its fiduciary duty, and its duty of good faith and fair dealing owed to S & G." In effect, S & G argues that due to IPA's refusal to initiate or join in an action for judicial review of the engineer's decision, the courts ultimately determined that S & G lacked standing and therefore the validity of the engineer's decision could not be decided. As a consequence, S & G's asserted injury is a failure of the judicial system to reach the merits of the engineer's decision. The measure of S & G's damages based on that

proposition would, of course, rest upon the entirely speculative presumption that judicial review of the merits of the engineer's decision would not only have resulted in a revision of that decision, but also would have allowed IPA a larger quantity of transferable water. The district court did not address the speculative nature of S & G's damages but rather held that S & G's complaint was time-barred by the six-year statute of limitations generally applicable to contracts. Utah Code Ann. § 78–12–23(2).[5]

S & G now argues (1) that the statute did not begin to run until a condition precedent—the completion of the appeals process in the original challenge to the state engineer's determination—had been satisfied, and (2) that IPA is estopped from asserting the statutory bar because of its endorsement of S & G's solo challenge to the engineer's decision.

#### A. Condition Precedent

"Generally, a cause of action accrues and the relevant statute of limitations begins to run 'upon the happening of the last event necessary to complete the cause of action.' " *Warren v. Provo City Corp.*, 838 P.2d 1125, 1128–29 (Utah 1992) (quoting *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981)). A contract action ordinarily accrues at the time of breach. *Upland Indus. Corp. v. Pacific Gamble Robinson Co.*, 684 P.2d 638, 643 (Utah 1984); *Koulis v. Standard Oil Co. of California*, 746 P.2d 1182, 1186 (Utah Ct.App.1987). In this case, the alleged breach occurred in 1984 when, as S & G claims, IPA failed to meet its contractual duty of filing a civil suit in district court challenging the state engineer's decision. The engineer's decision was rendered on

---

4. The receipt and release specifically reserved S & G's right to maintain an action for breach of fiduciary duty. On its face, this reservation appears to preserve S & G's first and third claims for relief. Nevertheless, the scope of the reservation is somewhat ambiguous. Consequently, at oral argument IPA asserted that the receipt and release actually released all three of S & G's present claims. This argument, however, was not well-developed in the briefs, and in light of our holding on the statute of limitations grounds adopted by the trial court, it is unnecessary for us to address it.

5. It is not entirely clear from the facts presented to this Court that this is indeed the correct statute of limitations. Nevertheless, inasmuch as any other statute applicable to the underlying claim would actually provide a less generous time period for bringing suit, and because IPA does not contest the issue, the question of whether another statute is applicable is immaterial to our decision.

September 10, 1984. If IPA had a duty to seek de novo review in the district court, it was required under the law then in force to do so within sixty days after the decision was issued. *See* Utah Code Ann. §§ 73–3–14 to – 15 (1980). Therefore, assuming that IPA's failure to seek de novo review constituted a breach of the contract, that breach must have occurred on or about November 9, 1984.

S & G, however, did not file its breach of contract suit until March 27, 1992, more than seven years later. In its brief S & G concedes that "if the parties did not agree upon a condition precedent or if IPA is not estopped by its affirmative conduct, then the claims would be barred." [6]

S & G grounds its condition precedent argument in the September 18, 1985, change order, which adjusted the terms of payment described in the amended contract of April 17, 1981. S & G's argument does not withstand scrutiny. The change order could not have created a condition precedent to a claim that had accrued ten months earlier.[7] Moreover, the district court correctly ruled that the terms of the change order did not create or alter any contractual conditions that affected the accrual of S & G's cause of action. The change order merely adjusted the payment schedule contemplated in the amended contract of April 17, 1981. Although the change order reiterated certain contingencies related to other potential contractual claims which were, and always had been, contingent upon the outcome of the judicial review of the engineer's decision, it did not change any terms relating to IPA's purported duty to sue if the state engineer made a decision unfavorable to S & G. In any event, neither the change order nor any other contractual agreement between the parties *could* have created a duty to obtain judicial review of the engineer's decision at any time beyond sixty days after that decision was entered. The sixty-day limit was fixed by statute and was beyond the control of the parties. S & G and IPA could not have constructed a condition precedent to the purported duty even if they had so desired.

### B. Estoppel

[15–17] S & G also asserts that IPA's actions estop it from claiming the limitations bar. Under this Court's traditional equitable estoppel analysis, S & G must demonstrate that IPA's actions caused S & G's failure to bring a timely suit. Specifically, the elements of estoppel are

(i) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (ii) reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act, or failure to act;

---

**6.** In its reply brief, S & G attempts to retract this concession by stating that its cause of action was "not fully matured" because its damages were not fully ascertained until it received an unfavorable ruling in *S & G Inc. v. Morgan*, 797 P.2d 1085, 1088 (Utah 1990). S & G's present appeal admittedly presents a rare circumstance where S & G's asserted damages may not have been entirely measurable until several years after the purported breach. Nevertheless, S & G should have been aware that an unfavorable ruling in *Morgan* would provide the very damages it now claims. Even though *Morgan* was decided at a time when S & G had only a few months left on its six-year limitations period, S & G had ample time to prepare a suit based on the theory it now presents and then file that suit in a timely manner as soon as the decision in *Morgan* was rendered. Moreover, even before *Morgan,* S & G likely could have brought a timely suit and then requested that, in light of the unusual circumstances relating to the pending appeal in *Morgan*, the trial court stay the action pending the outcome of *Morgan.* In short, this is not a case where "the law would be in the untenable position of having created a remedy for plaintiffs and then barring them from exercising it before they had any practical opportunity to do so." *Myers v. McDonald*, 635 P.2d 84, 87 (Utah 1981); *see also Brigham Young Univ. v. Paulsen Constr.*, 744 P.2d 1370, 1374 (Utah 1987) (holding suit barred because plaintiff had time to file suit within limitations period, even though there was significant delay in discovering cause of action). In fact, it appears that the actual cause of the tardy filing may have been S & G's lack of awareness of the limitations dilemma due to a mistaken presumption that all its causes of action were piggybacked upon the specific contingencies spelled out in various contractual documents. Consequently, S & G may have believed that the statute would not commence running until those contingencies were satisfied. Needless to say, such faulty legal assumptions do not toll the statute of limitations.

**7.** The change order was itself an amendment of sorts to the "Partial Payment Contract" of July 29, 1985, but that document was also executed subsequent to IPA's purported breach of its duty to obtain judicial review.

and (iii) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*CECO v. Concrete Specialists, Inc.*, 772 P.2d 967, 969–70 (Utah 1989). With respect to its estoppel argument, S & G asserts that (1) although IPA refused to challenge the engineer's decision, it "endorsed" S & G's suit for a de novo review of that decision and agreed to await the outcome of judicial review; (2) S & G delayed filing its breach of contract suit in reasonable reliance upon IPA's assurance that S & G could file the action for review of the engineer's decision on its own; and (3) S & G was injured by IPA's repudiation of its endorsement.

S & G, however, could not have reasonably relied on IPA's purported endorsement of S & G's challenge to the state engineer's decision for over six years. IPA openly refused to challenge the engineer's decision. Moreover, when the standing issue was raised before the district court, it must have become quickly evident that IPA's refusal to challenge the engineer's decision would likely preclude S & G from attacking the merits of that decision. Even if there was an element of uncertainty with respect to damages resulting from IPA's refusal to join the suit (due to continued judicial review of the initial challenge to the engineer's decision), it would be unreasonable for S & G to simply allow the statute to expire without making some attempt to file a timely claim.

In addition, the agreement in the change order to await the outcome of judicial review pertained only to the provision of the contract which set a presumed amount contingent on the failure of the courts to fix a different amount. However, that contractual provision pertains only to S & G's second cause of action. Hence, S & G's estoppel argument with respect to its first cause of action fails.

## IV. STATUTE OF LIMITATIONS ON S & G'S THIRD CAUSE OF ACTION

S & G also asserts a claim of fraud based on a " 'fiduciary relationship' which gave rise to duties imposed by law, rather than contract, the breach of which is tortious in nature." This allegation apparently arises out of the same facts as those pertaining to S & G's first cause of action. S & G again faults IPA for failing to file suit on the engineer's decision and accuses IPA of misleading S & G into believing that it could, by itself, legitimately obtain court review of the engineer's decision.[8] Under the statute relied on by S & G, accrual of S & G's claim, even assuming it to be valid, occurred upon "the discovery by the aggrieved party of the facts constituting the fraud or mistake." Utah Code Ann. § 78–12–26(3). S & G discovered the claim, at the very latest, when the district court, in 1986, dismissed S & G's action for review of the state engineer's decision, thus putting S & G on notice that IPA's "assurances" had been incorrect. Hence, the three-year statute of limitations had run long before S & G filed its tort-based claim.[9]

S & G offers condition precedent and estoppel arguments on its third cause of action that are substantially similar to the arguments it offered for its first cause of action. Those arguments are rejected for the same reasons as outlined in the analysis of S & G's first cause of action.

Affirmed.

ZIMMERMAN, C.J., and HOWE, DURHAM and RUSSON, JJ., concur in Associate Chief Justice Stewart's opinion.

---

8. The tort theory underlying this claim seems highly questionable. S & G asserts that IPA offered the opinion that S & G was entitled to pursue the first appeal of the engineer's decision on its own. However, S & G has not alleged any facts demonstrating that IPA offered the opinion disingenuously, nor has S & G explained why its own counsel simply accepted the opinion without questioning it or undertaking an independent investigation of its legal validity.

9. Again, it is not clear that this is the appropriate statute of limitations. However, S & G delayed its suit for more than four years after discovering the alleged malfeasance. Given the fact that the most generous, conceivably applicable statute, § 78–12–25(3) ("[a]n action for relief not otherwise provided for by law"), would only have afforded one more year to S & G, the precise question of which statute should be employed is once again immaterial to the outcome.