2005 UT App 225

**Stephen CLARKE, Plaintiff and Appellant,**

v.

**LIVING SCRIPTURES, INC., a Utah corporation, Defendant and Appellee.**

No. 20040381–CA.

Court of Appeals of Utah.

May 19, 2005.

Robert D. Rose, Salt Lake City, for Appellant.

Heidi E. Leithead, Parr Waddoups Brown Gee & Loveless, Salt Lake City, for Appellee.

Before BILLINGS, P.J., GREENWOOD, and THORNE, JJ.

## OPINION

BILLINGS, Presiding Judge:

¶1 Appellant Stephen Clarke challenges the trial court's dismissal of his breach of contract claim against his former employer, Living Scriptures, Inc. (Living Scriptures). We affirm.

## BACKGROUND

¶2 In 1986, Clarke accepted at-will employment with Living Scriptures selling religious books and audio-visual materials door-to-door. On April 7, 1997, Clarke signed a one-year employment contract (Employment Contract) with Living Scriptures. The Employment Contract (1) set forth Clarke's duties, (2) established his compensation package, (3) classified Clarke as an independent contractor, and (4) was automatically renewed each year unless terminated by either party. Section 10 of the Employment Con-

tract specifically stated that Living Scriptures "may terminate this [Employment Contract] upon [Clarke]'s failure to abide by the terms hereof or upon his failure to meet the minimum sales requirement, which is $3,000 of merchandise per month."

¶ 3 In August 1997, Clarke was promoted to the position of Provo Division Manager, but he continued to work under his existing Employment Contract. Clarke continued to sell Living Scriptures's materials door-to-door as well as perform additional management responsibilities. Clarke alleged that the additional duties resulted in a reduction of time dedicated to door-to-door selling thereby reducing his monthly sales commission income.

¶ 4 On December 9, 1997, a written notice of termination (the Notice) was hand delivered to Clarke. The Notice stated:

> This letter is your written notice that we are terminating the [Employment Contract] that we have with you effective 15 days from [December 9, 1997]. Please prepare and submit to us a list of all pending, unfinished business involving sales of [Living Scriptures's] products. This action is taken as per section 10 of the [Employment Contract] you signed on April 7, 1997.

¶ 5 On December 23, 2003, Clarke filed a complaint against Living Scriptures asserting claims for breach of employment contract, unjust enrichment, detrimental reliance, bad faith, fraudulent misrepresentation, lost business opportunity, breach of the implied covenant of good faith and fair dealing, and punitive damages. Living Scriptures moved to dismiss under Utah Rule of Civil Procedure 12(b)(6), asserting that each of Clarke's claims were barred by the applicable statutes of limitations. *See* Utah R. Civ. P. 12(b)(6). After a hearing on the matter, the trial court granted Living Scriptures's motion. Clarke appeals only the dismissal of his breach of employment contract claim.

## ISSUE AND STANDARD OF REVIEW

¶ 6 Clarke challenges the trial court's dismissal of his breach of contract claim asserting that the statute of limitations had not run. "On appeal from a motion to dismiss, we review the facts as they are alleged in the complaint. We accept the factual allegations in the complaint as true and consider all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff." *Ramsey v. Hancock*, 2003 UT App 319, ¶ 1 n. 1, 79 P.3d 423 (quotations and citations omitted). However, "[b]ecause the propriety of a 12(b)[(6)] dismissal is a question of law, we give the trial court's ruling no deference and review it under a correctness standard." *Ho v. Jim's Enters. Inc.*, 2001 UT 63, ¶ 6, 29 P.3d 633 (quotations and citation omitted).

## ANALYSIS

¶ 7 Clarke argues that the trial court erred by determining that the statute of limitations on his breach of contract claim began to run when Clarke received the Notice on December 9, 1997. Instead, Clarke asserts that the statute of limitations began to run on December 24, 1997, the effective date of his termination.

¶ 8 The parties agree that the applicable statute of limitations appears in Utah Code section 78–12–23, which provides, in relevant part, that "[a]n action may be brought within six years ... upon any contract, obligation, or liability founded upon an instrument in writing." Utah Code Ann. § 78–12–23(2) (1997).

¶ 9 In Utah, a statute of limitations begins to run when a cause of action accrues. *See Butcher v. Gilroy*, 744 P.2d 311, 313 (Utah Ct.App.1987). "Generally, a cause of action accrues and the relevant statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action." *S & G Inc. v. Intermountain Power Agency*, 913 P.2d 735, 740 (Utah 1996) (quotations and citations omitted). However, "[i]n a breach of contract action the statute of limitations ordinarily begins to run when the breach occurs." *Butcher*, 744 P.2d at 313; *see also S & G Inc.* 913 P.2d at 740 ("A contract action ordinarily accrues at the time of breach."). Therefore, we must determine whether the alleged breach occurred on the date Clarke received the No-

tice or whether it occurred on the effective date of his termination.

¶ 10 While neither the Utah Supreme Court nor the Utah Court of Appeals has considered this exact issue, a Utah Supreme Court case addressing statutes of limitation in a breach of contract action is instructive. In *S & G Inc.*, the parties entered into a contract for the purchase of water rights that was dependent upon an assessment by the Utah state engineer. *See* 913 P.2d at 737. When the state engineer's assessment did not come back as the parties had anticipated, S & G requested that Intermountain Power Agency (IPA) seek judicial review of the state engineer's decision. *See id.* IPA refused and suggested that S & G pursue its own appeal. *See id.* S & G did so and the court dismissed S & G's suit for lack of standing. *See id.*

¶ 11 S & G then filed an action against IPA for, inter alia, its failure to pursue the appeal on S & G's behalf. *See id.* at 738. IPA moved to dismiss on the grounds that S & G's cause of action for breach of contract was barred by the applicable statute of limitations. *See id.* S & G countered that the statute of limitations did not begin to run until its damages from IPA's refusal to undertake its contractual obligation to appeal the state engineer's decision had been fully ascertained. *See id.* at ·741. The Utah Supreme Court disagreed and held that S & G's damages flowed from the date when IPA refused to seek judicial review of the state engineer's decision on behalf of S & G. *See id.* In other words, the statute of limitations began to run at the time the purported breach of contract occurred: when IPA refused to perform under the contract and not when its damages were ascertained. The court stated that "S & G should have been aware that an unfavorable ruling in [its case against the state engineer] would provide the

very damages it now claims" and thus, S & G's "faulty legal assumptions," that the statute did not begin to run until its damages had been ascertained, "do not toll the statute of limitations." *Id.* at 741 n. 6. Accordingly, *S & G Inc.* stands for the proposition that, in a breach of contract case, one does not await the accrual of damages to begin the running of the statute of limitations.[1]

¶ 12 Clarke asserts that the Notice was merely an anticipatory breach of the Employment Contract, relying on a California Supreme Court case. *See Romano v. Rockwell Int'l, Inc.*, 14 Cal.4th 479, 59 Cal.Rptr.2d 20, 926 P.2d 1114, 1119 (1996). Clarke argues that because he elected to treat the Notice as an empty threat and did not leave employment until December 24, the final element of his cause of action for breach of contract did not accrue until that time. *See id.* at 1120. We do not agree.

¶ 13 In Utah, "[a]n anticipatory breach of contract is one committed before the time has come when there is a present duty of performance, and is the outcome of words or acts *evincing an intention to refuse performance in the future." Upland Indus. Corp. v. Pacific Gamble Robinson Co.*, 684 P.2d 638, 643 (Utah 1984) (emphasis added) (quotations and citation omitted). That is not the situation here. The Notice unequivocally states, *"we are terminating* the [Employment Contract] that we have with you effective 15 days from [December 9, 1997]." (Emphasis added.) There is nothing in the Notice that "evinc[es] an intention to refuse performance in the future." *Upland,* 684 P.2d at 643 (quotations and citations omitted). Thus, we conclude that the Notice was not an anticipatory breach of the Employment Contract, and as such Clarke's argument fails.

¶ 14 Rather, we adopt the reasoning of the United States Supreme Court in *Delaware*

---

1. Clarke asserts that in order for a cause of action for breach of employment contract to accrue, damages must be ascertained. Specifically, Clarke argues that he suffered damages only after his effective date of termination. However, as the Utah Supreme Court has stated, "it is well settled that [n]ominal damages are recoverable upon a breach of contract if no actual or substantial damages resulted from the breach or if the

amount of damages has not been proven." *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 18, 20 P.3d 388 (alteration in original) (quotations and citations omitted); *see also S & G Inc. v. Intermountain Power Agency,* 913 P.2d 735, 741 n. 6 (Utah 1996). Thus, Clarke could have brought his breach of contract claim when he received the Notice even if his damages could not be precisely ascertained.

*State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) and *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). The plaintiff in· *Ricks* brought an employment discrimination claim against Delaware State College alleging he was denied tenure because of his national origin. *See* 449 U.S. at 252, 101 S.Ct. 498. Delaware State College moved to dismiss on the basis that the claim was untimely. *See id.* at 255, 101 S.Ct. 498. The˙ Supreme Court held that the statute of limitations began to run from the date the plaintiff was notified that he would be denied tenure, and not from the later date when termination was effective. *See id.* at 258, 101 S.Ct. 498. The Court specifically stated that

> the only alleged discrimination occurred— and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to Ricks. That is so even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later.

*Id.* (footnote omitted). Similarly, in *Chardon,* the Court stated that "[i]n *Ricks,* we held that the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful." 454 U.S. at 8, 102 S.Ct. 28. The Court held that because in both *Chardon* and *Ricks* there were no other allegations of discriminatory acts after the date on which the decisions to terminate were made, the limitations period commenced on the date of notification. *See id.*

¶ 15 The majority of state courts that have addressed this issue have also held that in an employee's action based upon termination of employment, the limitations period begins to run at the time notice of termination is given, even if the employee continues to work for the employer for a period of time thereafter. Specifically, many state courts have held that in employment discrimination or wrongful discharge cases, the limitations period begins upon notice of the alleged discriminatory act. *See Eastin v. Entergy Corp.,* 865 So.2d 49, 54 (La.2004) (adopting the *Ricks / Chardon* rule explicitly and stating it is well settled that "the damage is sustained in any employment discrimination case at the earlier of the date

the employee is informed of his termination or his actual separation from employment"); *Turner v. IDS Fin. Servs.,* 471 N.W.2d 105, 108 (Minn.1991) (holding. that "in an unfair employment discrimination claim for job termination where an unequivocal, unconditional notice of termination is given, the statute of limitations begins to run from the time the notice of termination is received by the employee"); *Webster v. Tennessee Bd. of Regents,* 902 S.W.2d 412, 414 (Tenn.Ct.App. 1995) (holding that the plaintiff's complaint alleging employment discrimination was barred by the statute of limitations because it was filed more than a year after the plaintiff received notice of the decision to terminate him, but less than a year after the plaintiff's effective termination date); *Luna v. Frito–Lay, Inc.,* 726 S.W.2d 624, 628 (Tex. Ct.App.1987) (citing *Ricks* and noting that "accrual of an action for termination of employment under federal statutes occurs when the employee is informed that his employment will be terminated, not when it is actually terminated").

¶ 16 Furthermore, in other cases, courts have held that the limitations period begins when the employee is given notice of termination in alleged violation of an employment contract or when it becomes clear to the employee that the employer is not going to honor an employment agreement in some respect. *See Arnold v. S.J.L. of Kan. Corp.,* 249 Kan. 746, 822 P.2d 64, 68 (1991) (holding that in a breach of employment contract case, the statute of limitations began to run when it became apparent that plaintiff's employer was not going to honor the employment agreement); *Walch v. University of Mont.,* 260 Mont. 496, 861 P.2d 179, 182–83 (1993) (holding that in a claim for breach of the implied covenant of good faith and fair dealing, the cause of action accrues upon notice of termination because it is from the decision to terminate that the employee seeks relief); *Martin v. Special Res. Mgmt., Inc.,* 246 Mont. 181, 803 P.2d 1086, 1088–89 (1990) (following the *Ricks* and *Chardon* cases and holding that the employee's cause of action accrued upon notice of her termination because all the elements needed for a breach of employment contract claim were present at that time); *Sun Med., Inc. v. Overton,* 864

S.W.2d 558, 560 (Tex.Ct.App.1993) (holding that in a breach of employment contract case the limitations period began to run when the employee was notified that his sales territory had been altered allegedly in violation of his employment contract).

¶ 17 Moreover, there are several policy arguments that support a conclusion that the statute of limitations period should begin to run upon notice of termination. A rule that extends the statute of limitations to the last date of employment, rather than the date the employee receives notice of termination, would discourage employers from providing post-termination benefits. *See, e.g., Nation v. Bank of Cal.*, 649 F.2d 691, 695 (9th Cir. 1981) ("[A] rule focusing on the date of termination of economic benefits might dissuade an employer from extending benefits to a discharged employee after the employee had ceased working."); *Bonham v. Dresser Indus.*, 569 F.2d 187, 191–92 (3d Cir.1977) ("[W]e would ... view with disfavor a rule that penalizes a company for giving an employee periodic severance pay or other extended benefits after the relationship has terminated rather than severing all ties when the employee is let go.").

¶ 18 In addition, the statute of limitations for an action for breach of a written contract is six years, which is one of the longest available for any cause of action in Utah. *See* Utah Code Ann. § 78–12–23. Clarke had all the information necessary to file his breach of contract claim on December 9, 1997, but he chose to wait six years and fourteen days to file his complaint. This is not a situation in which a plaintiff has a very limited amount of time in which to file an action against his employer.

¶ 19 Therefore, we conclude that because Clarke received unequivocal notice on December 9, 1997 that he was being terminated, his cause of action for breach of contract accrued at that time. Accordingly, since Clarke did not file his complaint until December 23, 2003, more than six years after his claim accrued, the trial court correctly dismissed his complaint as untimely.[2]

## CONCLUSION

¶ 20 We hold that because Clarke failed to file his complaint before the statute of limitations expired under Utah Code section 78–12–23(2), the trial court properly dismissed his complaint for failure to state a claim under Utah Rule of Civil Procedure 12(b)(6). Accordingly, we affirm.

¶ 21 WE CONCUR: PAMELA T. GREENWOOD and WILLIAM A. THORNE JR., Judges.

---

**2.** We further note that whether Clarke continued to work after he received the Notice is legally irrelevant to our decision.