2013 UT App 218

# THE UTAH COURT OF APPEALS

JODI HOWICK,
Plaintiff, Appellee, and Cross-appellant
*v.*
SALT LAKE CITY CORPORATION,
Defendant, Appellant, and Cross-appellee.

Opinion
No. 20110848-CA
Filed September 6, 2013

Third District, Salt Lake Department
The Honorable Anthony B. Quinn
No. 090913336

W. Mark Gavre and Nicole G. Farrell, Attorneys for
Appellant
Jodi Howick, Appellee Pro Se

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE CAROLYN B. MCHUGH concurred. JUDGE GREGORY K. ORME
concurred, with opinion.

VOROS, Judge:

¶1      Jodi Howick was employed by Salt Lake City Corporation
as general counsel to the Salt Lake City International Airport. The
principal questions on appeal are (1) whether Howick was a merit
employee under the Utah Municipal Code, (2) if so, whether she
could legally forfeit merit protection, and (3) if so, whether she did.
We answer the first and second questions in the affirmative. We
remand for the district court to answer the third question.

BACKGROUND

¶2      In 1992, the City hired Howick as counsel for the Salt Lake City International Airport. In 1998, the City created a new position, "Appointed Senior City Attorney," in response to the salary dissatisfaction of some city attorneys. The position came with a significant pay increase, but the City required employees applying for the position to sign a document titled "Salt Lake City Corporation At-Will Employment Disclaimer." The Disclaimer purported to terminate the signer's merit employee status:

> I understand that, if I am appointed by the Salt Lake City Attorney to the "Appointed Senior City Attorney" position, my employment will be at-will and will be for no fixed length of time.

The City offered the new position to several attorneys. Some declined the offer and remained in their existing pay grades. Others, including Howick, signed the Disclaimer and moved to the new status. Both groups continued to receive pay increases, but the Appointed Senior City Attorneys received larger pay increases.

¶3      Although Howick had "tremendous expertise and experience that [was] not replicated by anyone else in the City Attorney's Office," the City terminated her employment in 2007. Howick filed a notice of appeal with the Salt Lake City Employee Appeals Board. *See generally Howick v. Salt Lake City Corp.*, 2008 UT App 216U (mem.) (per curiam). However, because the Labor Relations Officer determined that the Board lacked "jurisdiction to review the termination of . . . at-will employees," the appeal was not forwarded to the Board. *Id.* para. 3. Consequently, the Board did not hold a hearing or issue any order. *Id.* Howick sought review by this court. We dismissed the petition because we "lack[] jurisdiction to review decisions not to hold adjudicative proceedings" but noted that Howick could "petition for an extraordinary writ seeking an order mandating that the [Board]

issue a final agency decision on its own jurisdiction." *Id.* para. 3 & n.1.

¶4    The City then referred Howick's appeal of her termination to the Board. Without hearing testimony, the Board considered memoranda on the issue of whether Howick was a merit or an at-will employee at the time of her termination. *See Howick v. Salt Lake City Emp. Appeals Bd.* (*Howick II*), 2009 UT App 334, ¶ 2, 222 P.3d 763. The Board determined that she was an at-will employee, and Howick again sought review by this court. *Id.* ¶¶ 1–2. We held that the authority to make such a determination in the first instance was vested in the district court and that the Board's determination consequently exceeded its authority. *Id.* ¶ 17. Accordingly, we dismissed without prejudice, ruling that Howick needed to "obtain a determination from the district court regarding her employment status before we [could] entertain any appellate review." *Id.* ¶¶ 12, 18.

¶5    Howick filed suit in the district court and obtained a partial summary judgment that she retained merit employee status even after signing the Disclaimer. The trial court certified the judgment as final pursuant to rule 54(b) of the Utah Rules of Civil Procedure. The City now appeals, and Howick cross-appeals.[1]

ISSUES AND STANDARD OF REVIEW

¶6    The City contends that the district court erred by failing to fully analyze the issues before it, ruling that Howick's claims were not time-barred, concluding that Howick was a merit employee, and rejecting the City's defenses of waiver and estoppel based on the Disclaimer. Howick counters that the district court should have

---

1. Although Howick frames a portion of her cross-appeal as a challenge to the ruling of the Board, that ruling is not before us. In any event, we need not reach it given our resolution of the central issues of this appeal. Accordingly, we do not discuss it further.

granted her summary judgment motion in its entirety and reinstated her as an employee of the City.

¶7    Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Bingham v. Roosevelt City Corp.*, 2010 UT 37, ¶ 10, 235 P.3d 730 (citation and internal quotation marks omitted).

ANALYSIS

¶8    At the heart of this dispute is what we will refer to as the Merit Protection Statute, as it existed in 1998. The statute mandates merit protection for all municipal employees, subject to several enumerated exceptions. *See* Utah Code Ann. § 10-3-1105 (Michie 1996). The next statutory section provides that no protected municipal employee may be discharged or demoted "because of his politics or religious belief, or incident to, or through changes, either in the elective officers, governing body, or heads of departments." *Id.* § 10-3-1106(1). That section also sets forth a termination and appeals procedure applicable to protected employees. *See id.* § 10-3-1106(2)–(7).

¶9    The main substantive questions raised by this appeal are (1) whether Howick qualified as a merit employee under the Merit Protection Statute and (2) if so, whether she forfeited its protections by accepting a promotion to an "at-will professional position" and signing the Disclaimer. However, before we reach these questions we must address threshold procedural issues concerning (1) whether the district court made all rulings necessitated by our decision in *Howick II* and (2) whether Howick's claim is barred by the statute of limitations.

## I. The District Court Made All Required Rulings.

¶10    The City contends that the district court "failed to undertake the legal analysis required by this court." In *Howick II* we held that a district court action would permit Howick to test her claim of statutory merit status against the City's defenses of waiver and estoppel and thus allow the district court to determine whether she was a merit or an at-will employee. 2009 UT App 334, ¶ 8, 222 P.3d 763. Howick later filed the action and obtained the partial summary judgment now before us.

¶11    The district court ruled that the question of liability "comes down to an issue of statutory construction." It read the Merit Protection Statute as mandatory, "meaning that the provisions of the merit system apply to *all* employees except those that are specifically exempted." The court further determined that "there are simply no facts in the record from which to conclude that Ms. Howick was either a department head or a superintendent"; thus, it concluded, she was not specifically exempted by the statute. Finally, the court ruled that "because of the language of the statute, the parties cannot create an exception to the statute by contract, waiver, or estoppel." Allowing a city and its employee to expand the statutory exceptions to merit protection, the court reasoned, would permit a city to "pressure employees to enter into a contract giving up their rights as merit employees, while paying them only minimal compensation for doing so. This could effectively end merit employment as mandated by the legislature."

¶12    The City argues that the district court failed to analyze its waiver and estoppel defenses. The City asserts that "[w]aiver and estoppel are threshold doctrines that are applied to a party's claims at the outset and without considering the underlying legal merits." The City cites no legal authority for this assertion.[2] Moreover, the City offers no logical explanation why, having determined that the

---

2. Later in its argument the City cites *Glew v. Ohio State Bank*, 2007 UT 56, 181 P.3d 791, but that case does not support the City's assertion that waiver and estoppel are threshold issues.

City's equitable defenses—regardless of their merit—were barred by the Merit Protection Statute's mandatory terms, the district court should have proceeded to analyze the merits of these barred defenses. Accordingly, the City has not shown that the district court erred in this regard.

¶13   The district court also rejected the City's statute of limitations defense. It did so on two alternative grounds. First, it ruled that "regardless of the merits of the [statute of limitations] argument," our decision in *Howick II* required that it address the substance of Howick's claim. Second, it ruled that in any event, "on the merits, [Howick] has the better position." The court explained that "[a]lthough technically either side could have brought a declaratory judgment action testing the validity of Ms. Howick's at-will status from the time it went into effect, there was no real justiciable dispute until Ms. Howick was terminated." The court continued, "When she was, [she] did exactly what she was entitled to do as a merit employee—she pursued her direct remedy by filing a timely appeal to the city's employee appeals board and then filing timely appeals with the Court of Appeals."

¶14   The City contends that the district court "disregarded the statute of limitations governing Ms. Howick's claim, while implicitly admitting that her claim was time barred." The City quotes the district court's oral ruling, which stated that "almost regardless of the merits, [it] would not decide this case on statute of limitations grounds because the Court of Appeals clearly wanted this done." However, the district court also concluded that "on the merits, [Howick] has the better position" and explained its rationale for that conclusion.

¶15   We conclude that the district court did address the limitations defense "on the merits" and thus do not agree with the City that the district court, in the City's words, "failed to undertake the legal analysis required by this court" in *Howick II*. *See Allen v. Friel*, 2008 UT 56, ¶ 4, 194 P.3d 903 (noting an appellant's obligation to challenge the basis of the trial court's decision and the

appellant's concomitant burden to demonstrate error in that decision); *Duchesne Land, LC v. Division of Consumer Prot.*, 2011 UT App 153, ¶ 8, 257 P.3d 441 (rejecting appellant's claim on the ground that it did "not address[] the actual basis for the district court's ruling").

## II. Howick's Wrongful Termination Claim Is Not Time-Barred.

¶16   The City next contends that, in any event, Howick's declaratory judgment cause of action is barred by the statute of limitations as a matter of law. "Because the basis of Ms. Howick's claim is that she was improperly made an at-will employee in 1998 and that her at-will agreement was 'void' and 'illegal' in 1998," the City argues, "her claim is barred by the statute of limitations." Under this analysis, Howick's claim for declaratory judgment arose when she accepted the promotion and signed the Disclaimer in 1998, but she did not file her complaint until 2009. As a result, the City argues, her claim is time-barred whether it is viewed as alleging a statutory violation and is thus subject to a three-year limitations period, *see* Utah Code Ann. § 78B-2-305(4) (LexisNexis 2012), or as alleging breach of contract and is thus subject to a six-year limitations period, *see id.* § 78B-2-309.[3]

¶17   Although the City asserts that "Ms. Howick's *declaratory judgment cause of action* is barred by the statute of limitations as a matter of law" (emphasis added), her complaint alleges four claims for relief, all arising from the same set of facts. Her other claims allege "wrongful termination in violation of statutes and in violation of public policy," "breach of implied contract," and "breach of implied covenant of good faith and fair dealing." The City never asserts that these claims are time-barred. Similarly, the City does not challenge the district court's ruling that, upon

---

3. We cite to the current version of the Utah Code where the relevant provisions have not changed in any way material to our analysis.

termination, Howick "pursued her direct remedy by filing a timely appeal to the city's employee appeals board and then filing timely appeals with the Court of Appeals." Nor does the City argue that Howick's claims for wrongful termination, breach of implied contract, or breach of implied covenant of good faith and fair dealing are barred by her failure to seek declaratory judgment earlier.

¶18    If the determination of a claim for damages requires a district court to determine the respective rights of the parties, a "separate request for declaratory relief is subsumed by [the plaintiff's] damages action." *See Rhodes v. Robinson*, 408 F.3d 559, 566 n.8 (9th Cir. 2004). Here, Howick's claims for wrongful termination and breach of contract required the district court to determine the respective rights of the parties. Consequently, those claims subsumed her claim for declaratory relief. *See id.* Moreover, Howick could not have sued for wrongful termination before she was terminated. *See Clarke v. Living Scriptures, Inc.*, 2005 UT App 225, ¶¶ 14–19, 114 P.3d 602 (adopting the rule that "in an employee's action based upon termination of employment, the limitations period begins to run at the time notice of termination is given" because, inter alia, the employee's cause of action "accrue[s] at that time"). And the City does not argue that Howick's failure to sue for a declaration of her rights before her termination cuts off her ability to sue for damages after her termination. Accordingly, the City has not demonstrated that the district court erred in rejecting its limitations defense.

III. Howick Was Legally Able To Waive Her Merit Protection.

A.    Howick Enjoyed Merit Protection.

¶19    The City contends that even before Howick signed the Disclaimer in 1998 she was an at-will employee under the Merit Protection Statute "because the statute (as it was worded at the time) allowed municipalities to make 'superintendents' and 'heads

of departments' at-will employees" and that Howick fit within these exempt job classifications.[4]

¶20   The Merit Protection Statute provided that all municipal employees are merit employees except for those holding positions specifically enumerated:

> All appointive officers and employees of municipalities, other than members of the police departments, fire departments, heads of departments, and superintendents, shall hold their employment without limitation of time, being subject to discharge or dismissal only as hereinafter provided.

Utah Code Ann. § 10-3-1105 (Michie 1996). Commenting on the 2004 version of the Merit Protection Statute, we have stated that by enumerating "very limited exceptions to the presumption that all municipal employees are merit employees . . . , the statute appears to be aimed at ensuring that a maximum number of employees are guaranteed stability in employment." *Kocherhans v. Orem City*, 2011 UT App 399, ¶ 10, 266 P.3d 190. This guarantee allows municipal employees "to advance their careers within the municipal government system without fear of arbitrary termination—to the benefit of the employee and the city—except for the very top positions of the municipal hierarchy." *Id.*

¶21   The Merit Protection Statute thus "preserves the ability of a new administration . . . to ensure that a municipality's core leadership positions are staffed with men and women of its own

---

4. The statute was amended in 2004. *See* Utah Code Ann. § 10-3-1105 (LexisNexis 2007), amend. notes. Howick was terminated in 2007. Although our opinion in *Pearson v. South Jordan City* suggests that the version of the statute in effect on the date of an employee's termination might govern a dispute arising from that termination, 2012 UT App 88, ¶¶ 16–17, 275 P.3d 1035, neither party asserts that the 2004 amendment applies.

choosing" while preventing a "spoils system" that would threaten "massive turnover of city employment with each change of municipal administration." *Id.*; *see also Hayward v. Pennock*, 444 P.2d 59, 61 (Utah 1968) (stating that the reasons for the merit system include "protect[ing] employees and the public from the evils of the spoils system").[5]

¶22 The question before us is whether Howick fit within the exceptions for "heads of departments" or "superintendents" who are exempt from this protection. *See* Utah Code Ann. § 10-3-1105. This question is governed by her actual duties, not her job title. *See Pearson v. South Jordan City*, 2012 UT App 88, ¶ 25, 275 P.3d 1035.

---

5. "To get a proper vision and perspective we go back to the" 1899 statute, which allowed municipal department heads to remove subordinates "at any time, without cause, hearing or opportunity to be heard, and such action was not subject to review or to be called in question." *Vetterli v. Civil Serv. Comm'n of Salt Lake City*, 145 P.2d 792, 797 (Utah 1944) (Larson, J., concurring in part and dissenting in part). "This setup was the 'spoils system' at its worst." *Id.* Utah's evolution from a patronage system to a merit system reflected a national trend:

> Patronage practice is not new to American politics. It has existed at the federal level at least since the Presidency of Thomas Jefferson, although its popularization and legitimation primarily occurred later, [with] the Presidency of Andrew Jackson. . . . More recent times have witnessed a strong decline in its use, particularly with respect to public employment. Indeed, only a few decades after Andrew Jackson's administration, strong discontent with the corruption and inefficiency of the patronage system of public employment eventuated in the Pendleton Act, the foundation of modern civil service. And on the state and local levels, merit systems have increasingly displaced this practice.

*Elrod v. Burns*, 427 U.S. 347, 353–54 (1976) (citations omitted).

¶23   The district court ruled that Howick was not a superintendent or department head. It read the statute carefully, emphasizing that the word "all" tended to broaden the class of merit-protected employees. The court observed that the City never referred to Howick as the head of a department or as a superintendent; the Airport's organizational chart showed her in a staff position rather than a line position "as you would expect for a department head or superintendent"; and Howick supervised only a secretary, a paralegal, and occasionally another attorney.

¶24   In support of its claim that Howick was a superintendent or department head, the City points to the following facts: Howick was the Airport's "in house legal counsel" and held the title of "Chief Counsel"; she was involved in "all management decision making at the Airport"; she was evaluated by the Airport's Executive Director rather than the City Attorney; she supervised a paralegal, a legal secretary, and during one period another attorney; and she supervised outside counsel.

¶25   The City does not identify any department that Howick headed or superintended. At most she supervised her own secretary, a paralegal, and one other attorney, while overseeing contractual work done by outside counsel. The Utah Municipal Code does not define the term *department*. However, it specifies that the administrative authority in a city of the first class,[6] like Salt Lake City, be divided into five departments: Public Affairs and Finance, Water Supply and Waterworks, Public Safety, Streets and Public Improvements, and Parks and Public Property. *See* Utah Code Ann. § 10-3-801 (LexisNexis 2012); *see also Kocherhans v. Orem City*, 2011 UT App 399, ¶ 12, 266 P.3d 190. This use of the term *department* connotes much more than the personal assistants Howick regularly supervised.

---

6. A city of the first class is defined as one with a population of 100,000 or more. Utah Code Ann. § 10-2-301 (LexisNexis 2012).

¶26    Despite her designation as "Chief Counsel," Howick in fact presided over no named municipal department. She supervised only her own personal secretary and paralegal and occasionally one additional attorney. That she was involved in all management decision-making at the Airport and that she was evaluated by the Airport's Executive Director rather than the City Attorney suggest that she was a key employee, but not that she was a department head.

¶27    To determine whether an employee is exempted from merit protection we have previously considered a city's organizational chart. *See Pearson v. South Jordan City*, 2012 UT App 88, ¶ 31, 275 P.3d 1035. Here, the Airport's organizational chart shows the Office of the Director at the top presiding over "Directors" of (1) Finance and Administration, (2) Planning and Environment, (3) Air Service and Marketing, (4) Operations, (5) Maintenance, (6) Engineering, (7) and Public Relations. Howick appears as legal counsel in a staff position to the side of the Office of the Director. This placement supports the court's conclusion that she was not a municipal department head or superintendent.

¶28    In sum, the district court correctly ruled that Howick did not fall within what *Kocherhans* called the "very limited exceptions" to the Merit Protection Statute. *See Kocherhans*, 2011 UT App 399, ¶ 10.[7]

B.    Public Policy Does Not Prevent Howick from Waiving Merit Protection.

¶29    Having determined that Howick was covered by the protections of the Merit Protection Statute, we must now decide whether those protections may be forfeited by contract, waiver, or

---

7. This conclusion is consistent with our statement in *Howick II* that Howick's "job position is not listed among the positions specifically excluded from merit status." *See Howick II*, 2009 UT App 334, ¶ 6, 222 P.3d 763.

estoppel. Howick contends that permitting cities to contract around the Merit Protection Statute would undermine the important public policy it advances.

¶30    This analysis informed the district court's ruling. It reasoned that "[a]llowing an exception to the statute [by contract, waiver, or estoppel] would vitiate the entire purpose behind the statute . . . , because the city could do the same thing with any employee . . . . This could effectively end merit employment as mandated by the legislature." The court thus ruled, and Howick agrees, that the document she signed, coupled with her job description in the City's personnel manual, offended the public policy expressed in the Merit Protection Statute.

¶31    The City contends that the district court erred in ruling that "the language in sections 10-3-1105 and 10-3-1106 trumped all other arguments, including waiver and estoppel."

¶32    First, the City argues that "[a]ttorneys are subject to the strong public policy principle that the client may always terminate the attorney-client relationship at the client's sole discretion," relying on comment 4 to rule 1.16 of the Utah Rules of Professional Conduct. This argument proves too much—it would effectively nullify the Merit Protection Statute as applied to all attorneys based on a comment to a professional rule. Moreover, as Howick notes, competing public policy weighs against permitting government officials to discharge their staff counsel at will: "a lawyer for the government may have a legal duty to question the conduct of government officials and perform additional remedial or corrective actions including investigation and prosecution." Utah R. Prof'l Conduct 1.13, cmt. 13a.

¶33    Second, the City argues that "[o]nly where a statute embodies public policy in a strong sense may it be used to invalidate a contract voluntarily entered into (and only where the contract harms the public in general)," and that no such public policy considerations are present here.

¶34   "People are generally free to bind themselves pursuant to any contract, barring such things as illegality of subject matter or legal incapacity." *Ockey v. Lehmer*, 2008 UT 37, ¶ 21 n.12, 189 P.3d 51 (brackets, citation, and internal quotation marks omitted). Accordingly, "an enforceable contract can coexist with a statute that may conflict with its terms so long as the contract does not offend the public policy to which the statute gives voice." *Lee v. Thorpe*, 2006 UT 66, ¶ 22, 147 P.3d 443. "For a contract to be void on the basis of public policy, there must be a showing free from doubt that the contract is against public policy." *Ockey*, 2008 UT 37, ¶ 21 (citation and internal quotation marks omitted). Our supreme court in *Ockey* considered two factors in determining whether a contract was against public policy. The first was whether the statute specifically declared contrary contracts to be void; the second was whether the contract offended public policy or harmed the public as a whole, as opposed to the contracting party only. *Id.* ¶¶ 19, 23.

¶35   With respect to the first factor, the City rightly observes that unlike many Utah statutes, the Merit Protection Statute contains no express anti-waiver provision. *See, e.g.*, Utah Code Ann. § 19-3-319(7)(a) (LexisNexis 2010) ("An agreement . . . requiring the employee to waive benefits under [the Radiation Control Act] is void."); *id.* § 34A-2-108(1) (LexisNexis 2011) ("[A]n agreement by an employee to waive the employee's rights under [the Worker's Compensation Act] is not valid."); *id.* § 35A-4-103(1)(a) ("Any agreement by an individual to waive, release, or commute his rights to benefits [under the Utah Employment Security Act] is void."); *id.* § 57-11-5(3) (LexisNexis 2010) (providing that a "right of rescission [under the Land Sales Practice Act] may not be waived by agreement"); *id.* § 61-1-108(2) (LexisNexis 2011) ("An individual may not waive a right or protection provided by [the Utah Uniform Securities Act] by agreement . . . ."). The first *Ockey* factor thus weighs in favor of permitting merit employees to contract away their merit protection.

¶36   The second factor is whether the contract offends public policy or harms the public as a whole. *See Ockey*, 2008 UT 37,

¶¶ 21–23. As explained above, civil service systems generally, and merit protection statutes of the type at issue here specifically, were designed to end the "patronage practice" or "spoils system" in government. In addition, merit-protected government attorneys are likely to feel greater freedom than at-will attorneys to candidly advise their clients or take other actions as required by the Utah Rules of Professional Conduct. These protections benefit the public as a whole, not merely the protected employee.

¶37    However, the City argues that public policy as embodied in the statute has recently shifted. In 2012 the Utah Legislature amended the Merit Protection Statute, apparently in response to cases recently decided by this court. *See* Utah Code Ann. § 10-3-1105 (LexisNexis 2012). The amendment represents a substantial expansion of the statute; the 2012 version of the statute contains 426 words, as compared to 178 words in the 2004 version and a mere 39 words in the 1998 version. The 2012 version also adds approximately nine categories of excluded employees and permits a municipality to exempt up to five percent of its workforce from the protections of the statute. And, of relevance here, it excludes from merit protection an employee who has either "acknowledged in writing that the employee's employment status is appointed or at-will" or "voluntarily waived the procedures required by Section 10-3-1106." *Id.* § 10-3-1105(2)(e). These amendments took effect after the district court had ruled and after opening briefs were filed in this appeal. Although the City did not argue that the 2004 amendment to the statute applied to Howick's claims, it does argue that the 2012 amendment controls.

¶38    We do not agree. "[W]e apply the law as it exists at the time of the event regulated by the law in question." *State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829. Thus, matters of substance are governed "by the law in effect at the time of their underlying primary conduct (e.g., the conduct giving rise to a criminal charge or civil claim)." *Id.* ¶ 14. Matters of procedure are governed by the law in effect at the time of "the underlying procedural act (e.g., filing a motion or seeking an appeal)." *Id.* The Merit Protection Statute falls into the former category. This factor weighs against application of

the amendment here. Further, our legislature has mandated that "[a] provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive." Utah Code Ann. § 68-3-3 (LexisNexis 2011). The legislature did not expressly declare the 2012 amendment to the Merit Protection Statute to be retroactive. Thus, this factor also weighs against its application.

¶39     However, our courts have "recognized a narrow, judge-made exception to the retroactivity ban, allowing that 'when the purpose of an amendment is to clarify the meaning of an earlier enactment, the amendment may be applied retroactively in pending actions.'" *Clark*, 2011 UT 23, ¶ 11 (quoting *Department of Soc. Servs. v. Higgs*, 656 P.2d 998, 1000–01 (Utah 1982)). The City maintains that this exception applies here.

¶40     As noted above, the 2012 amendment expanded the Merit Protection Statute to 426 words—a ten-fold increase when compared to the 1998 version. The 2012 amendment added many exceptions to the statute's protections, including one for employees like Howick who waive its protections. Like exemptions for the administrative assistants of elected officials, persons whose job descriptions identify their positions as at-will, and temporary employees, the exemption for those waiving merit protection did not appear in the 1998 or 2004 versions of the statute. Accordingly, the 2012 amendment "was not a mere clarification of the law; it was an affirmative addition of . . . new exemption[s] to the statute." *Salt Lake County v. Holliday Water Co.*, 2010 UT 45, ¶ 44, 234 P.3d 1105.

¶41     Therefore, because the 2012 amendment of the Merit Protection Statute was substantive, was not expressly declared to be retroactive, and was not a mere clarification of the prior version of the statute, it may not be applied to actions taken before its passage. It therefore does not control this case.

¶42     But neither is the 2012 amendment irrelevant. Although it is "inapplicable to this case," we regard it "as a reflection of current legislative views on public policy." *Farmers New World Life Ins. Co. v. Bountiful City*, 803 P.2d 1241, 1246 n.2 (Utah 1990). We can hardly

agree that Howick has made "a showing free from doubt that the contract is against public policy," *see Ockey v. Lehmer*, 2008 UT 37, ¶ 21, 189 P.3d 51, when current statutory law expressly authorizes the contract, *see* Utah Code Ann. § 10-3-1105(2)(e) (LexisNexis 2012). While Utah may in the past have had a consistent public policy against permitting municipalities to induce their employees to waive merit protection, it no longer does. On the contrary, our statutory law now expressly permits such waivers within stated limits.

¶43    In sum, neither *Ockey* factor is satisfied here. The Merit Protection Statute does not specifically declare contrary contracts to be void, nor does this case present a showing free from doubt that the contract offends public policy. *See Ockey*, 2008 UT 37, ¶¶ 21, 23. Accordingly, the Merit Protection Statute did not prohibit Howick from contracting away her merit protection.

### IV. Remand Is Required for Further Proceedings by the District Court and, If Appropriate, the Employee Appeals Board.

¶44    The district court understandably concluded that no contract, waiver, or estoppel could circumvent the protections afforded by the Merit Protection Statute. It therefore did not adjudicate those issues. But because we conclude that the Merit Protection Statute does not foreclose those defenses, we remand to the district court for plenary resolution of those issues. *See Warne v. Warne*, 2012 UT 13, ¶ 45, 275 P.3d 238; *Uintah Basin Med. Ctr. v. Hardy*, 2005 UT App 92, ¶ 20, 110 P.3d 168.

¶45    If the district court on remand rules in favor of the City's contract, waiver, or estoppel defenses and so concludes that Howick was an at-will employee, it should proceed to dispose of the case as appropriate, inasmuch as "the Board lacks jurisdiction over the claims of non-merit employees." *Howick II*, 2009 UT App 334, ¶ 7, 222 P.3d 763. If, on the other hand, it rejects those defenses and concludes that Howick was a merit employee, "the Board is indeed the proper forum to determine whether her termination was justified." *Id.* ¶ 8.

CONCLUSION

¶46    The district court addressed all the issues necessitated by our opinion in *Howick II*. It properly concluded that Howick's lawsuit is not time-barred and that she was originally a merit employee covered by the Merit Protection Statute. However, based on the absence of an anti-waiver provision and the lack of a showing "free from doubt" that Utah public policy prohibits an employee in Howick's position from waiving the protections of the statute, we conclude that the Merit Protection Statute did not preclude Howick from contracting away her rights under that statute. Accordingly, we reverse the district court's contrary ruling and remand for further proceedings.[8]

———————

ORME, Judge (concurring):

¶47    I concur in the court's opinion but write separately to add a comment about the role of public policy in this case. The lead opinion correctly concludes that Howick has not made "a showing free from doubt that the contract offends public policy." *See supra* ¶ 43. I agree, but I wish to emphasize that, at least in my view, we can so conclude largely because of the unique facts of this case. Howick was not an unsophisticated public employee but rather was a seasoned, experienced attorney who can be presumed to have known exactly what she was doing in entering into the contract. Indeed, as a key attorney for the City, she should have alerted her client, who also happened to be her employer, to the possibility that the contract was illegal if she honestly thought that it was. My view about the public policy implications of a contract

———————

8. Given our resolution of these issues, we need not address the issues presented in Howick's cross-appeal and her attempt to challenge the ruling of the Board. *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989).

like the one Howick signed would be very different if she were a less sophisticated, less well-educated employee.

———