2011 UT App 399

Darwin **KOCHERHANS**, Plaintiff and Appellant,

v.

**OREM CITY and Jeffrey W. Pedersen, Defendants and Appellees.**

No. 20100565–CA.

Court of Appeals of Utah.

Nov. 25, 2011.

Justin D. Heideman, Provo, for Appellant.

Stanley J. Preston, Bryan M. Scott, and Stephen J. Preston, Salt Lake City, for Appellees.

Before Judges ORME, ROTH, and CHRISTIANSEN.

## MEMORANDUM DECISION

ROTH, Judge:

¶1 Darwin Kocherhans appeals the dismissal of his complaint for failure to exhaust administrative remedies, arguing that he was an at-will employee exempted from the administrative review procedures outlined in Utah Code section 10–3–1106 (section 1106), *see* Utah Code Ann. § 10–3–1106(2) (Supp. 2011) (providing that employees who are involuntarily transferred with less pay, suspended for more than two days without pay, or terminated from city employment shall have the right to appeal to an Employee Appeal Board).[1] Kocherhans also asserts that the district court erred in alternatively dismissing his claim for wrongful termination on the basis that there was no implied contract as a matter of law. We affirm.

¶2 Kocherhans had worked for Orem City (the City) for twenty-six years when he was promoted to Treasury Division Manager in 2006. On September 15, 2008, Kocherhans received a notice of intent to terminate for cause. Pursuant to the grievance procedures in the Orem City Employee Manual (the Manual or the City Manual), Kocherhans filed a timely appeal to Jeffrey W. Pedersen, his immediate supervisor.[2] Pedersen denied the appeal, and Kocherhans was terminated effective September 24, 2008. Kocherhans

---

1. As a convenience to the reader, we cite to the current version of section 1106, which is identical to the version in effect at the time of these proceedings. *See* Utah Code Ann. § 10–3–1106 amend. notes (Supp. 2011) (stating that all amendments took effect on May 5, 2008).

2. In addition to being Kocherhans's immediate supervisor, Pedersen was the Administrative Services Director. The City's internal grievance procedures permit an employee who has received a notice of intent to terminate to "request[ ] a meeting with the Department Director to present additional evidence" to contest the intended termination. Submission to applicable internal grievance procedures is a prerequisite to seeking section 1106 review. *See* Utah Code Ann. § 10–3–1106(2)(b).

appealed Pedersen's termination decision to the City's Employee Appeal Board (the Board), as provided for in the City Manual as well as by section 1106, *see id.* On December 15, 2008, the Board issued a decision upholding the termination. Kocherhans did not seek review of the Board's decision by the Utah Court of Appeals, the next available level of appeal under state law. *See id.* § 10–3–1106(6)(a) ("A final action or order of the appeal board may be reviewed by the Court of Appeals by filing with that court a petition for review.").

¶ 3 Eight months later, on August 10, 2009, Kocherhans filed a complaint against the City and Pedersen (collectively, Defendants) in district court, claiming that he had been wrongfully terminated. Kocherhans alleged that he was serving as Treasury Division Manager at the time he was terminated, that he had appealed the decision to terminate to his supervisor, Pedersen, and that Pedersen was the City's Administrative Services department director. He did not mention his status as either a merit or an at-will employee but attached a copy of the City Manual to the complaint.[3]

¶ 4 Defendants moved to dismiss, asserting, inter alia, that Kocherhans had failed to exhaust his administrative remedies in not seeking review of the Board's decision by the Utah Court of Appeals. *See generally* Utah R. Civ. P. 12(b)(1) (permitting a defendant to move to dismiss a complaint for lack of subject matter jurisdiction); *Housing Auth. of Salt Lake v. Snyder,* 2002 UT 28, ¶ 11, 44 P.3d 724 (stating that a failure to exhaust administrative remedies results in a lack of subject matter jurisdiction). In response, Kocherhans argued, alternatively, that section 1106's review requirement was permissive rather than mandatory[4] and that he was exempted from section 1106's requirements because he was an at-will head of a department or deputy to a head of a department, as used by Utah Code section 10–3–1105 (sec-

tion 1105), *see* Utah Code Ann. § 10–3–1105(1), (2)(g)-(h) (2007) (excluding certain municipal employees, such as "a head of a municipal department" and "a deputy of a head of a municipal department," from the protections and requirements of section 1106), and therefore was not subject to the administrative process set out in section 1106, which applies only to merit employees, *see id.* § 10–3–1105; *id.* § 10–3–1106(2).

¶ 5 The district court ruled in favor of Defendants, dismissing Kocherhans's complaint with prejudice on the basis that he had not exhausted administrative remedies when he failed to seek review of the Board's decision by the Utah Court of Appeals. In reaching this decision, the court concluded that Kocherhans's job as Treasury Division Manager was classified by the City Manual as a merit position subject to both the protections and requirements of the administrative process related to job termination. The court rejected Kocherhans's argument that he was an at-will employee and therefore not required to exhaust administrative remedies, concluding that the City Manual classified only Department Directors as at will and that Kocherhans's job did not fit within that classification. Rather, the Manual defined "Department Director," as the "administrative head of a department[, who is] . . . designated as the Department Director for that Department," and classified Department Directors as "Executive Management" who were at will and therefore outside the scope of the administrative process afforded merit employees faced with termination. Kocherhans's position as Treasury Division Manager, however, was classified as "Management," not "Executive Management," and the City Manual designated those holding "Management" positions essentially as merit employees, that is, protected from termination other than for cause and subject to administrative procedures designed to guard against arbitrary dismissal. The district court further

---

3. Documents attached to the complaint are incorporated into the pleadings and may properly be considered by the district court in deciding a motion to dismiss, even when they contain statements contrary to those averred in the complaint. *See Oakwood Vill. LLC v. Albertsons, Inc.,* 2004 UT 101, ¶ 10, 104 P.3d 1226.

4. Kocherhans's theory that the appeal requirement was permissive has since been rejected in *Thorpe v. Washington City,* 2010 UT App 297, 243 P.3d 500.

reasoned, "Nowhere in [Kocherhans's] job title is th[e] term [Department Director] used, nor does the [City Manual] ever employ the term[ ] 'Department Director' ... with reference to his position.... [Likewise, h]is job title does not define him as being a deputy or an assistant."

¶ 6 Kocherhans argues that, in dismissing his complaint, the district court erred by accepting the City Manual's definition of "Department Director" as the equivalent of the statutory term "head of a municipal department," as used in section 1105, and also in concluding that Kocherhans was not "a deputy of a head of a municipal department" because the City Manual did not designate any such position within the City's employment structure. Kocherhans contends that, at a minimum, the issue of whether his position as Treasury Division Manager was the "head of a municipal department" or a "deputy" of a head of department within the scope of section 1105 is a question of fact that should have survived Defendants' motion to dismiss. We conclude, however, that the district court appropriately decided the matter.

¶ 7 Section 1105 sets up a presumption that most employees of municipalities within the state will be merit employees, who can be terminated only for cause and have recourse to an administrative appeal process if they are terminated. *See id.* § 10–3–1105(1) ("[E]ach employee shall hold employment without limitation of time, being subject to discharge ... only as provided in [section 1106]."). The limited exceptions involve the most senior management positions: "[This requirement] does not apply to ... a head of a municipal department [or] ... a deputy of a head of a municipal department...." *Id.* § 10–3–1105(2)(g)–(h). The terms "head of a municipal department" and "deputy," however, are not defined in section 1105, and the parties have not identified, nor have we located, any other statutory provisions where these terms are defined.

¶ 8 Kocherhans does not dispute that the legislature appears to have left the identification of "head of a municipal department" and "deputy" positions to the municipal government. He disagrees, however, with Defen-

dants' contention that his position as Treasury Division Manager was not "a head of a municipal department." The main basis for this belief is that the City Manual does not identify any "head[s] of ... department" as the term is used in section 1105. Rather, according to Kocherhans, the Manual refers to "Department Director[s]," thus making it a question of fact whether his treasury division manager position was also "a head of a municipal department." Kocherhans further argues that because the City did not expressly exclude deputies from its organizational hierarchy, it is a question of fact whether he fulfilled such a role within the meaning of section 1105. This argument, however, assumes, without analysis, that by including deputy director positions in its exemption from merit employment, section 1105 also *required* that the City establish a deputy position for each department.

¶ 9 Kocherhans has not provided us with any tools for assessing whether the City's interpretation and implementation of section 1105 is appropriate. We therefore look for guidance in the rules of statutory interpretation. "Our goal when confronted with questions of statutory interpretation is to evince the true intent and purpose of the Legislature." *Anderson v. Bell*, 2010 UT 47, ¶ 9, 234 P.3d 1147 (internal quotation marks omitted). To achieve that goal, we must consider a statute's plain language, "presum[ing] that the legislature used each word advisedly and giv[ing] effect to each term according to its ordinary and accepted meaning." *Arredondo v. Avis Rent A Car Sys., Inc.*, 2001 UT 29, ¶ 12, 24 P.3d 928 (internal quotation marks omitted). We "read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Carter v. University of Utah Med. Ctr.*, 2006 UT 78, ¶ 13, 150 P.3d 467 (internal quotation marks omitted).

¶ 10 Section 1105 provides that all municipal employees are merit employees except for those holding positions specifically enumerated, which include heads of departments and deputies to the heads of departments. *See* Utah Code Ann. § 10–3–1105 (2007). Thus, by setting up very limited exceptions

to the presumption that all municipal employees are merit employees subject to the protections of section 1106, the statute appears to be aimed at ensuring that a maximum number of employees are guaranteed stability in employment so that they may have incentive to advance their careers within the municipal government system without fear of arbitrary termination—to the benefit of the employee and the city—except for the very top positions of the municipal hierarchy, positions that are normally subject to direct appointment by the city administration. This presumption also seems designed to ensure that municipalities do not establish a "spoils system" of governance that brings with it the variety of ills that accompany the threat of massive turnover of city employment with each change of municipal administration. Yet, by allowing at-will termination of employees in some specified high-level positions, it also preserves the ability of a new administration, once elected, to ensure that a municipality's core leadership positions are staffed with men and women of its own choosing in order to better carry out the political and other goals which were presumably the basis for its election. In declining to further define those at-will positions, however, the legislature appears to give each municipality considerable discretion to organize and structure its workforce as it deems best to implement its governmental functions and serve its citizenry. Indeed, Utah's Municipal Code takes a deliberately expansive approach to the powers it grants to municipal governments to accomplish their public responsibilities: "The powers herein delegated to any municipality shall be liberally construed to permit the municipality to exercise the powers granted by [the Utah Municipal Code, in which section 1105 and section 1106 fall,] except in cases clearly contrary to the intent of the law." *See id.* § 10-1-103.

¶ 11 Review of the Manual indicates that the City uses the term "Department Director" in a manner that makes it equivalent to section 1105's "head of a municipal department." For example, Kocherhans's role as Treasury Division Manager is categorized as a "Management" position, while all the City's "Department Directors" are classified as "Executive Management" not subject to mer-

it employment protections and therefore essentially employed at will. Executive Management employees are those "[e]mployees in classifications designated as Executive Management who are Department Directors and serve at the pleasure of the City Manager. These employees constitute the executive staff of the City and *do not receive the grievance and appeals rights* provided in these policies and procedures." (Emphasis added.) The Manual then outlines the procedures for bringing an appeal before the Board (which Kocherhans did in this case) and again notes that "[o]nly full-time, part-time, and supplemental probationary employees ... shall have the right to appeal to the Board. Probationary employees, flexible employees, trainee employees, and *executive management employees* ... are not eligible to appeal to the Board." (Emphasis added.) Although the City Manual does not refer to sections 1105 or 1106, its processes and protections parallel those described in section 1106, and its designation of eligible and exempt employees is consistent with section 1105's exemption of the "head of a municipal department" from section 1106's protections. Thus, it is apparent that the City intended its references to a "Department Director" to correspond with the statutory exemption of a "head of a municipal department" from section 1106's protections.

¶ 12 The legislature, however, did not leave the City completely unfettered in its discretion as to how to structure its workforce: The municipal code requires each municipality with more than 65,000 citizens to maintain at least five specific departments, which include Public Affairs and Finances, Water and Waterworks, Public Safety, Streets and Public Improvements, and Parks and Public Property. *See id.* § 10-3-805 (requiring that "administrative powers, authority and duties in cities of the second class be divided into five departments," which include those just enumerated); *id.* § 10-3-801 (same for cities of the first class); *see also id.* § 10-2-301(2)(a)-(b) (classifying cities with populations greater than 65,000 as cities of the first and second class); City of Orem, *General Plan 2009*, 5, http://www.orem.org/DSPlan/P C2009/03-04/ID10255_files/general%

20plan.pdf (estimating the City's 2008 population at 93,178). The City Manual identifies seven Department Directors, who are the heads of the Administrative Services, City Attorney, Development Services, Library, Public Safety, Public Works, and Recreation Departments.[5] Nothing in the legislative mandate appears to require, as Kocherhans contends, that the treasury itself be a separate department or that the manager of that division be deemed the head of a department for purposes of at-will employment classification. In particular, the municipal code seems to contemplate that financial management services will be included within the mandated Public Affairs and Finances Department, see Utah Code Ann. § 10–3–805, and the City appears to have done just that by making the treasury division a part of the Administrative Services Department, the apparent counterpart to the statutorily-required Public Affairs and Finance Department, within the City organization. Because the City has complied with the statutory requirements for department heads and Kocherhans has identified no other errors in the City's designations, we cannot conclude that the City erred in not classifying Kocherhans's Treasury Division Manager position as an at-will head of a municipal department.

¶ 13 Moreover, the only positions designated at will in the City Manual are the seven heads of the City's departments, the City Manager, and the Assistant City Manager. None of the at-will positions are designated by the Manual as deputy positions, nor does the Manual designate any "deputy" department head position, at will or otherwise.[6]

The City Manual's silence on deputy department head positions thus seems to support the City's contention that Kocherhans's position as Treasury Division Manager was not a deputy position because the City affirmatively elected not to include any deputy to a department head positions in its organizational structure. In focusing on whether he was, in fact, a deputy, Kocherhans has failed to address the question of whether the City was required by section 1106 to employ deputy department heads and has not pointed to any authority or made any arguments to persuade us that it must. To the contrary, it does not seem unreasonable for the City to intentionally spread any "deputy" responsibilities among the division managers so that together they might fulfill a deputy function while not designating any single employee within a department who would independently fulfill this role. In fact, in taking this approach the City seems to be implementing the apparent goal of the statute by ensuring that as many employees as possible are merit employees, thereby promoting a level of employment stability and efficiency that would tend to encourage capable career employees to advance into higher management positions without the fear of arbitrary dismissal that would necessarily attach to a designated deputy department head. Such an approach therefore does not appear, on its face, to be contrary to legislative intent.

■ ¶ 14 We are reluctant to read a corresponding mandate that municipal departments have deputies into section 1105's requirement that a deputy department head be employed at will. Unlike the head of depart-

---

**5.** While not a part of our decision here, an organizational chart found on the City's public website seems to confirm that the City is organized into seven departments: Administrative Services, Development Services, Legal Services, Library, Public Safety, Public Works, and Recreation. See City of Orem, *Candidate Guide 2009*, 25, http://www.orem.org/PDF/RO/2009Candidate Guide.pdf (organizational chart identifying the seven departments and the divisions that fall under each department). These seven departments, despite their greater number and dissimilar descriptions, appear to encompass all those required by statute. The Administrative Services Department, for example, in which the treasury division falls, includes, among other divisions, financial services, utility billing, purchasing, in-

formation technology, human resources, and risk management. *See id.*

**6.** The only identified "executive management" position that appears to be an equivalent to a deputy is the Assistant City Manager. The Assistant City Manager, however, is second-in-command to the City Manager, which position itself is not exempt from merit employee status as a head of a department but rather as an "officer appointed by the mayor or other person or body exercising executive power in the municipality." Utah Code Ann. § 10–3–1105(2)(a) (2007). We do not resolve the issue of whether an assistant city manager position is exempt under section 1105 and, if so, under which subsection it is classified.

ment positions, which seem to be a natural outgrowth of the municipal code's requirement that cities maintain specific departments that will necessarily have department heads, there does not appear to be any express statutory basis for deputy positions. Although silence in statutory construction is not always telling, the interpretive maxim *expressio unius est exclusio alterius,* or "the expression of one thing is the exclusion of another," applies "where in the natural association of ideas the contrast between a specific subject matter which is expressed and one which is not mentioned leads to an inference that the latter was not intended to be included within the statute." *See Monson v. Carver,* 928 P.2d 1017, 1024–25 (Utah 1996) (internal quotation marks omitted). Without any legal arguments to the contrary, it appears reasonable to interpret the legislature's decision as one not expressly requiring deputy positions in light of its grant of considerable discretion to a municipality in arranging its mode of governance. With this view in mind, we conclude that Kocherhans has failed to demonstrate that the City was required by section 1106 to concentrate its deputy-like responsibilities in a single at-will "deputy" department head position, rather than to disburse those functions, as the City appears to have done, among the merit division managers within each city department.

¶ 15 Because Kocherhans has not shown any error in the City's classification of his position as merit, we affirm the district court's decision to dismiss on the basis that Kocherhans failed to exhaust available administrative remedies when he did not timely seek review of the Board's decision in this court. Our affirmance of the district court's dismissal on this ground means we do not reach the alternative basis for dismissing his wrongful termination claim.

¶ 16 WE CONCUR: GREGORY K. ORME and MICHELE M. CHRISTIANSEN, Judges.