IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Daniel Pearson, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100446-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (March 29, 2012) |
| South Jordan City, | ) | |
| | ) | 2012 UT App 88 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 090914481
The Honorable Kate A. Toomey

Attorneys:     Camille N. Johnson and Judith D. Wolferts, Salt Lake City, for
              Appellant
              Gregory G. Skordas and Chad D. Noakes, Salt Lake City, for Appellee

-----

Before Judges McHugh, Davis, and Thorne.

McHUGH, Presiding Judge:

¶1     The City of South Jordan (the City or South Jordan) appeals from the trial court's order granting partial summary judgement in favor of Daniel Pearson. The trial court concluded that South Jordan could not terminate Pearson's employment without meeting the procedural requirements afforded to certain public employees under Utah Code sections 10-3-1105 and 10-3-1106. *See* Utah Code Ann. §§ 10-3-1105 to -1106 (2007).[1] We reverse and remand for proceedings consistent with this opinion.

---

1. Because of substantive amendments made during the 2012 legislative session, we cite to the version of the Utah Code Annotated in effect at the time of Pearson's dismissal.

BACKGROUND

¶2      This dispute arises from the January 30, 2007 termination of Pearson from his position as assistant police chief of South Jordan.  Pearson had held the post since July 2002.  The City claimed that Pearson was an at-will employee and thus could "be terminated at any time, with or without cause or explanation."  Pearson was offered a severance package in exchange for his resignation.  When Pearson refused to resign, the City terminated his employment without stating a reason.

¶3      Because at-will employees are not entitled to administrative review through the City's Employee Appeals procedure, Pearson challenged the City's classification of him as such.  After the City's Employee Appeals Board (the Board) upheld his at-will status and termination, Pearson appealed directly to this court.  *See Pearson v. South Jordan Emp. Appeals Bd.*, 2009 UT App 204, ¶¶ 5-6, 216 P.3d 996.  We dismissed Pearson's appeal for lack of subject matter jurisdiction because "jurisdiction for a decision interpreting section 10-3-1105 [exempting certain positions from administrative review] must originate from the district court."  *See id.* ¶ 15.

¶4      Consistent with our decision, Pearson filed a complaint in the third district court in West Jordan on August 17, 2009.  The complaint included a request for declaratory judgment regarding his employment status and claims for breach of written and oral contract, promissory estoppel, and unjust enrichment.  Subsequently, Pearson filed a motion for partial summary judgment on the issue of whether state law allowed the City to classify an "assistant police chief" as an at-will employee.  *See* Utah Code Ann. § 10-3-1105 (2007).[2]  The City opposed Pearson's motion and countered with a cross-

---

2.  Utah Code section 10-3-1105 reads in pertinent part:

> (1) Except as provided in [s]ubsection (2), each employee of a
> municipality shall hold employment without limitation of
> time, being subject to discharge . . . only as provided in
> [s]ection 10-3-1106.
> (2) Subsection (1) does not apply to:  . . . (d) a deputy police
> chief of the municipality; . . . (f) a deputy or assistant fire
> chief of the municipality . . . .

Utah Code Ann. § 10-3-1105 (2007).  Section 10-3-1106 provides a process under which

(continued...)

motion for partial summary judgment, asking the trial court to conclude that Pearson could be terminated at-will under section 10-3-1105.

¶5     After oral arguments, the trial court issued a memorandum decision, granting partial summary judgment in favor of Pearson.  The trial court determined that, according to the dictionary, a "deputy" is a "substitute with power to act" or one who "usu[ally] takes charge when his or her superior is absent."  *See Merriam-Webster's Collegiate Dictionary* 336 (11th ed. 2004).  In contrast, "assistant" is defined as merely a helper.  *See id.* at 74.  The trial court reasoned that the statute's exemption of both "a deputy or assistant fire chief" but only "a deputy police chief" indicated a legislative intent to use the two terms to identify different positions within a city department.  It then concluded that because the City did not assign Pearson the title "deputy police chief," it could not treat him as an at-will employee.  We granted the City's petition for interlocutory appeal of that decision.[3]


## ISSUE AND STANDARD OF REVIEW

¶6     South Jordan challenges the trial court's partial summary judgment in favor of Pearson on the ground that section 10-3-1105 of the Utah Code does not require the City to classify its assistant police chief as a merit employee.  "'[S]ummary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.'"  *Knight v. Salt Lake Cnty.*, 2002 UT App 100, ¶ 6, 46 P.3d 247 (alteration in original) (quoting *Schuurman v. Shingleton*, 2001 UT 52, ¶ 9, 26 P.3d 227).  "'On review of summary judgment, we give no deference to the trial court's conclusions but review them for correctness.'"  *Id.* (quoting *Brinton v. IHC Hosps., Inc.*, 973 P.2d 956, 964 (Utah 1998)).  We view "'the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.'"  *Orvis*

---

2.  (...continued)
employees categorized under section 10-3-1105(1) are entitled to appeal.  *See* Utah Code Ann. § 10-3-1106 (2007).

3.  Pearson also claims that the City agreed by contract to treat him as a merit employee. That issue was not a subject of the summary judgment motions and remains pending in the trial court.

*v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (quoting *Higgins v. Salt Lake Cnty.*, 855 P.2d 231, 233 (Utah 1993)).


ANALYSIS

¶7     South Jordan raises two issues before this court in support of its argument that the trial court incorrectly granted partial summary judgment in favor of Pearson.  To begin, the City argues that the trial court inappropriately applied the version of section 10-3-1105 in effect when Pearson was fired in 2007, rather than the version in effect when Pearson was hired in 2002.  Alternatively, the City argues that the trial court erred in its interpretation of the 2007 version of the code because "deputy" should be read to mean "second-in-command."

¶8     We first determine that South Jordan did not preserve the issue of whether the trial court should have applied the earlier version of the statute.  We then conclude that the trial court did not plainly err in applying the then-current version of the statute.  Next, we depart from the trial court's interpretation of the then-current statute, in part.  While we agree that the Utah Legislature intended the terms "assistant" and "deputy" to have different meanings, we hold that it is the scope of a municipal employee's responsibilities, rather than the employee's specific job title, that governs whether the City may terminate the employee at-will.

I. The Trial Court Did Not Plainly Err in Applying the Then-Current Statute

¶9     Pearson was hired in July 2002, as the assistant police chief of South Jordan.  At that time, section 10-3-1105 allowed municipalities to define all "members of the police departments" as at-will employees subject to termination without meeting the requirements of section 10-3-1106 (the 1999 Act).  *See* Utah Code Ann. § 10-3-1105 (1999) In 2004, the Utah Legislature amended the statute to provide that all public employees must be afforded the process provided by section 10-3-1106, unless their position is included on the list contained in section 10-3-1105(2) (the 2004 Act).  *See* Utah Code Ann. § 10-3-1105 (2007).  Those statutory exceptions include the municipality's "police chief" and "deputy police chief," but do not include an "assistant police chief."  *See id*. § 10-3-1105(2).

¶10    Thus, the terms of the 1999 Act, in effect when the City hired Pearson, unambiguously allowed South Jordan to fire him without providing the procedural protections of section 10-3-1106. *See* Utah Code Ann. § 10-3-1106 (2007). With the 2004 amendments, however, the City's right to terminate Pearson at-will was limited by whether his job fell within one of the positions enumerated in section 10-3-1105(2). *See id.* § 10-3-1105. According to the City, the 1999 Act should govern this dispute because Pearson's statutory due process rights were fixed at the time of hiring, and because applying the 2004 Act retroactively would negatively affect the City's substantive right to fire Pearson at-will.

A. South Jordan Did Not Preserve Its Argument that the 1999 Act Should Apply

¶11    South Jordan did not raise in the trial court its argument that determining Pearson's status under the 2004 Act would result in the improper retroactive application of substantive amendments to the statute. To be preserved for appeal, an "issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 23, 215 P.3d 152 (internal quotation marks omitted). "An issue is preserved if it is raised in a timely fashion, clearly identified, and adequately briefed." *Id.*

¶12    In asserting that this issue is preserved, the City points generally to its statements to the trial court that when it hired Pearson in 2002, he was an at-will employee under the 1999 Act. *See generally* Utah Code Ann. § 10-3-1105 (1999) (providing that "[a]ll appointive officers and employees of municipalities, other than members of the police departments . . . shall . . . b[e] subject to discharge or dismissal only as hereinafter provided"). However, we could find nothing in the record to indicate that the City argued to the trial court that the statute in effect in 2002 should govern Pearson's termination in 2007. While South Jordan provided factual background that the 1999 Act was in effect when Pearson was hired and would have allowed the City to terminate his employment at-will at that time, it did not ask the trial court to use the 1999 Act to resolve the issues relating to Pearson's termination. Instead, South Jordan focused its arguments to the trial court entirely on the language of the 2004 Act, referring to the 1999 Act only as "the predecessor statute to the one we're looking at." Because the issue was not presented in a way that the trial court had an opportunity to rule on it, the issue is unpreserved. *See Normandeau*, 2009 UT 44, ¶ 23. Consequently, we will review Pearson's argument that the 1999 Act is applicable on appeal only if the trial court

plainly erred in deciding the matter under the 2004 Act.  *See State v. King*, 2006 UT 3, ¶ 20, 131 P.3d 202 (stating that an appellant must demonstrate either plain error or exceptional circumstances for reversal based on an unpreserved issue).

B.  Any Assumed Error in Applying the 2004 Act Was Not Plain

¶13    The City contends that it should have been plain to the trial court that applying the 2004 Act was erroneous due to the general bar on the retroactive application of laws. To establish plain error, the City must establish three elements:

> First, [it] must establish that an error did in fact occur.
> Second, [it] must establish that the error should have been obvious to the trial court.  Third, the [City] must establish that the error was harmful, i.e., that there is a reasonable likelihood that [it] would have enjoyed a more favorable outcome absent the error.

*King*, 2006 UT 3, ¶ 21 (citations and internal quotation marks omitted).

¶14    For purposes of our analysis we assume without deciding that the trial court erred.  Thus, we must first address the element of obviousness.  "To establish that the error should have been obvious to the trial court, [the City] must show that the law governing the error was clear at the time the alleged error was made."  *State v. Dean*, 2004 UT 63, ¶ 16, 95 P.3d 276.  Thus, an error is not obvious if "there is no settled appellate law to guide the trial court."  *State v. Ross*, 951 P.2d 236, 239 (Utah Ct. App. 1997).

¶15    The City first argues that settled law provides that Pearson's statutory rights are limited to those existing when he was hired.  However, none of the authority cited by the City supports that assertion.  Instead, South Jordan points us to several cases in which an employee was unable to assert a right at termination because the employee enjoyed no contractual or statutory right to continued employment.  *See, e.g., Board of Regents v. Roth*, 408 U.S. 564, 578-79 (1972) (holding that a contract employee had no right to employment beyond a one-year contract, where no statutory right existed); *Conaway v. Smith*, 853 F.2d 789, 793-94 (10th Cir. 1988) (holding that a probationary public employee was at-will because under Kansas law only those hired for a definite

term were entitled to merit status); *Trivoli v. Multnomah Cnty. Rural Fire Dep't*, 703 P.2d 285, 287 (Or. Ct. App. 1985) (holding that an employee could not expect a vested right to employment until completing the statutory probationary period). South Jordan has identified no decision holding that an employee's expectation of tenure is fixed when he is hired and cannot be changed during his employment by statutory amendments. Instead, "[a]s a general rule, public employment is governed by statute and legislative policy, and is therefore subject to change as thought best by the people, acting through their legislative representatives."[4] *Utah Pub. Emps. Ass'n v. State*, 2006 UT 9, ¶ 27, 131 P.3d 208. Therefore, we cannot conclude that it should have been obvious to the trial court that an employee's rights cannot expand as a result of legislation enacted subsequent to his date of hire.

¶16    Nor are we convinced that it should have been obvious to the trial court that Pearson's initial employment is the proper focus in determining which version of the Act governs. While we agree that courts have generally refused to apply substantive changes to the law retroactively, *see generally Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1128 n.2 (10th Cir. 2001) (noting that a statutory amendment after termination did not apply retroactively to the terms of employment), "when adjudicating a dispute we apply the version of the statute that was in effect 'at the time of the events giving rise to [the] suit.'" *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 12, 227 P.3d 256 (alteration in original) (quoting *Taghipour v. Jerez*, 2002 UT 74, ¶ 5 n.1, 52 P.3d 1252). "Generally, a cause of action accrues . . . upon the happening of the last event necessary to complete the cause of action." *See S & G Inc. v. Intermountain Power Agency*, 913 P.2d 735, 740 (Utah 1996) (internal quotation marks omitted); *see also Retherford v. AT & T Commc'ns of the Mountain States, Inc.*, 844 P.2d 949, 962 (Utah 1992) (holding that a statute in effect at the time of an employee's termination preempted a common law cause of action for retaliatory discharge). Here, Pearson's cause of action against the City arose as a result of his termination; prior to that last event, he had no claim against the City. *See Clarke v. Living Scriptures, Inc.*, 2005 UT App 225, ¶ 19, 114 P.3d 602 (holding that a cause of action for breach of contract accrued at notice of termination).

---

4. The exceptions to this rule are when a public employee has a "vested contractual interest in retirement benefits," or when an employer agrees by implied or express contract to provide "additional obligations beyond the relevant statutory requirements." *See Utah Pub. Emps. Ass'n v. State*, 2006 UT 9, ¶ 27, 131 P.3d 208.

¶17     Therefore, we are not convinced that it should have been apparent to the trial court that the application of the 2004 Act was erroneous, or that applying the 2004 Act would retroactively impact South Jordan.  Because South Jordan has not established plain error, we do not reach the merits of its assertion that Pearson's rights should be determined under the 1999 Act.

## II.  The City Was Not Required by Statute to Treat Pearson as a Merit Employee

¶18     When interpreting a statute we look first to its plain language.  "We read the plain language of the statute as a whole[] and interpret its provisions in harmony with other statutes in the same chapter and related chapters."  *LPI Servs. v. McGee*, 2009 UT 41, ¶ 11, 215 P.3d 135 (quoting *Miller v. Weaver*, 2003 UT 12, ¶ 17, 66 P.3d 592).  "We presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning."  *State v. Holm*, 2006 UT 31, ¶ 16, 137 P.3d 726 (internal quotation marks omitted).  "When the plain meaning of the statute can be discerned from its language, no other interpretive tools are needed."  *LPI Servs.*, 2009 UT 41, ¶ 11 (citing *Martinez v. Media-Paymaster Plus/Church of Jesus Christ of Latter-day Saints*, 2007 UT 42, ¶ 47, 164 P.3d 384).

## A.  The Trial Court Correctly Distinguished "Deputy" from "Assistant"

¶19     Section 10-3-1105(1) provides that "[e]xcept as provided in [s]ubsection (2), each employee of a municipality shall hold employment without limitation of time, being subject to discharge . . . only as provided in [s]ection 10-3-1106."  *See* Utah Code Ann. § 10-3-1105 (2007).  Section 10-3-1106 affords discharged employees the right to appeal the termination of their employment to an appeals board.  *See id.* § 10-3-1106.  However, subsection (2) of section 10-3-1105 provides a list of high-level positions, including "a deputy police chief," that are exempt from the requirement that a municipality make the administrative process of section 10-3-1106 available upon discharge.  *See id.* § 10-3-1105(2)(d).  As the trial court correctly noted, the legislature's use of "a deputy or assistant fire chief," but only "a deputy police chief" indicates a legislative intent to distinguish the terms "deputy" and "assistant" as used in section 10-3-1105.

¶20     We are also in agreement with the trial court's assessment of the different common meanings of the two terms.  A deputy is "[a] person appointed or delegated to act as a substitute for another, esp[ecially] for an official."  *Black's Law Dictionary* 507

(9th ed. 2009). An assistant, on the other hand, is "a person who assists" or a "helper." *See Merriam-Webster's Collegiate Dictionary* 74 (11th ed. 2004). Other jurisdictions that have defined "deputy" have done so in accordance with this definition. *See, e.g., Wilbur v. Office of the City Clerk*, 300 P.2d 84, 89 (Cal. Dist. Ct. App. 1956) (defining "deputy" as "one authorized to exercise the office or rights which the officer possesses, for and in place of the [officer]" (citing 2 Eugene McQuillin, *The Law of Municipal Corporations* 68, § 439 (2d ed. rev. 1945))); *Blackburn v. Brorein*, 70 So.2d 293, 296 (Fla. 1954) (en banc) ("A deputy is a substitute for another and is empowered to act for him in his name and behalf in all matters in which the principal may act.").

¶21 Utah courts have not explicitly defined "deputy," but cases that have considered the term have treated it consistently with the definition applied in other jurisdictions. For example, our supreme court held that an employee of the auditor's office had to meet statutory requirements before the employee could act as a deputy auditor with the authority to conduct a tax sale in place of the auditor. *See Page v. McAfee,* 26 Utah 2d 208, 487 P.2d 861, 862 (1971) (applying then-current statute). Likewise, our supreme court implicitly recognized the distinction between an assistant and a deputy in *Meyers v. Second Judicial District Court*, 108 Utah 32, 156 P.2d 711 (1945). There, the court described the deputy attorney general as one who could "act during the absence or disability of the attorney general," but described assistant attorneys general as persons who "aid[ed] him in the performance of the duties imposed upon him by law." *See id.* ¶ 716-17 (applying then-current statute). Thus, we conclude that unlike an assistant, who merely helps a principal actor, a deputy, as that term is defined in the 2004 Act, describes a substitute who is empowered to act in the place of the principal.

B. The 2004 Act Is Ambiguous with Respect to the Proper Interpretation of Section 10-3-1105(2)

¶22 Pearson argues that because the exceptions in subsection (2) include "deputy police chief" but not "assistant police chief," the plain language of section 10-3-1105(2)(d) required the City to treat him as a merit employee entitled to administrative review. *See* Utah Code Ann. § 10-3-1105. Pointing to the exemption for both "deputy" and "assistant" fire chiefs in section 10-3-1105(2)(f), Pearson argues that the legislature would have incorporated "assistant police chief" into the list if it had intended to exempt that position. *See id.*

¶23    In response, South Jordan asserts that the statute does not require a municipality to use the precise title listed so long as the employee it treats as at-will performs the same functions as would a person described by one of the enumerated titles. Where Pearson was performing the functions of the second-in-command of the police department, the City reasons that it could fire him without adhering to the procedure provided by section 10-3-1106.

¶24    Because each of these interpretations is plausible, we conclude that the statute is ambiguous. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 15, 267 P.3d 863 (indicating that a statute is ambiguous when its language is "susceptible to two or more reasonable interpretations"). Thus, we must determine whether, in using the term "deputy police chief," the legislature intended to exempt only police officers with the title "deputy," or any police officer with a job description that entails the duties of a "deputy." In doing so, we may consider legislative history and public policy considerations. *See Nelson v. Salt Lake Cnty.*, 905 P.2d 872, 875 (Utah 1995) ("Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations." (internal quotation marks omitted)). We undertake that analysis now.

C.    Employees Who Perform the Substantive Duties of the Roles Listed in Section 10-3-1105 Are Exempt

¶25    The trial court held that only employees with the exact job titles enumerated in section 10-3-1105 are excluded from the mandatory process afforded by section 10-3-1106, regardless of their actual duties. Pearson argues that such an interpretation provides employees with certainty as to their statutory merit status by simply comparing their job title to the statutory list. While recognizing the ease of application provided by the trial court's ruling, we also acknowledge the danger that an employee who does not actually function at the high level expected of those subject to termination at-will could lose merit status simply because the municipality has assigned him a title on the section 10-3-1105(2) list. Furthermore, we are convinced that a review of the employee's actual duties is consistent with our recent decision in *Kocherhans v. Orem City*, 2011 UT App 399, 266 P.3d 190 (mem.).[5]

---

5. Our *Kocherhans v. Orem City*, 2011 UT App 399, 266 P.3d 190 (mem.) opinion was

(continued...)

¶26   In *Kocherhans*, Orem's treasury division manager, who had been terminated for cause, brought an action directly in the district court for wrongful termination after the Orem Employee Appeal Board upheld his discharge. *See id.* ¶ 3. Orem then moved to dismiss the complaint based on the failure to exhaust the administrative remedies provided in section 10-3-1106(6)(a), which required him to appeal to the Utah Court of Appeals. In response, Kocherhans argued that he was exempt from that process as an "at-will head of a department or deputy to a head of a department" under section 10-3-1105(2). *See id.* ¶ 4. To determine whether the failure to exhaust the section 10-3-1106 remedies divested the district court of subject matter jurisdiction, this court first had to decide whether Kocherhans was a merit or an at-will employee. *See id.* ¶¶ 6-9.

¶27   In undertaking that analysis, we noted that "[s]ection 1105 sets up a presumption that most employees of municipalities within the state will be merit employees who can be terminated only for cause and have recourse to an administrative process." *Id.* ¶ 7. However, this court also acknowledged that municipalities are not bound to provide these procedural protections to "the most senior management positions" listed in section 10-3-1105(2). *Id.* The *Kocherhans* court observed that this statutory scheme provides most municipal employees stability and thus, "incentive to advance their careers . . . without fear of arbitrary termination," thereby preventing a "'spoils system' of governance that brings with it the variety of ills that accompany the threat of massive turnover of city employment with each change of municipal administration." *See id.* ¶ 10. At the same time, the statute allows a municipality to terminate top-level employees without cause, thus "preserv[ing] the ability of a new administration, once elected, to ensure that a municipality's core leadership positions are staffed with men and women of its own choosing." *See id.*

¶28   In addition, the *Kocherhans* court explained that by declining to define "deputy" or the other positions listed in section 10-3-1105(2), "the legislature appears to give each municipality considerable discretion to organize and structure its workforce as it deems best to implement its governmental functions and serve its citizenry." *See id.* Indeed, the Utah Municipal Code itself dictates that "[t]he powers herein delegated to any municipality shall be liberally construed to permit the municipality to exercise the

---

5. (...continued)
issued over a-year-and-a-half after the trial court granted partial summary judgment in favor of Pearson and was therefore unavailable to the trial court.

powers granted by this act except in cases clearly contrary to the intent of the law." Utah Code Ann. § 10-1-103 (2007) (*cited in Kocherhans*, 2011 UT App 399, ¶ 10). In concluding that Orem had not exceeded that discretion, the *Kocherhans* decision did not consider the title used by the municipality determinative alone of the employee's status and whether the city must afford the employee administrative process. *See Kocherhans*, 2011 UT App 399, ¶¶ 5, 11, 13. Instead, we examined the city's structure as well as its employees' assigned duties, and compared them with those typically performed by persons with the titles listed in section 10-3-1105(2). *See id.*

¶29    Relying on Orem's employee manual, the panel concluded that Orem "uses the term 'Department Director' in a manner that makes it equivalent to section 1105's 'head of a municipal department.'" *See Kocherhans v. Orem City*, 2011 UT App 399, ¶ 11, 266 P.3d 190 (mem.). Even though Orem had not assigned these employees a title precisely as listed in section 10-3-1105, the *Kocherhans* court determined that they could be exempted from the procedural protections of section 10-3-1106. Thus, we concluded that Orem had not exceeded its discretion in classifying those positions as at-will in the employee manual. *See id.* The decision also held that Orem had properly classified Kocherhans's division manager position as entitled to merit protection because it did not include duties equivalent to a deputy head of a department. *See id.* ¶ 13. While section 10-3-1105 exempted deputies from mandatory merit status, the panel held that it did not require municipalities to employ any "deputies." *See id.* ¶ 13; *see also* Utah Code Ann. § 10-3-1105 (2007). The *Kocherhans* panel looked beyond the fact that the title "division manager" was not contained in the statutory list and considered the duties Kocherhans was authorized to perform according to the city's manual. *See id; cf. Ward v. Richfield City*, 776 P.2d 93, 97 (Utah Ct. App. 1989) (holding that a "city marshal" effectively operated as a police chief and, as such, was a member of a police department for purposes of the 1999 Act), *aff'd*, 798 P.2d 757 (Utah 1990). It appeared from the manual that Orem had "intentionally spread any 'deputy' responsibilities among the division managers so that together they might fulfill a deputy function while not designating any single employee as a deputy." *See Kocherans*, 2011 UT App 399, ¶ 13 & n.6. Because those duties were not equivalent to a position designated as at-will by section 10-3-1105(2), Orem had not exceeded the discretion granted by statute by treating Kocherans as a merit employee. *See id.* ¶ 14; *see also* Utah Code Ann. § 10-3-1105.

¶30   Thus, to determine Pearson's employment status, we must first consider whether his duties were equivalent to those of a deputy police chief. If so, the City could treat him as an at-will employee under section 10-3-1105(2). Otherwise it was required under section 10-3-1105(1) to afford him the procedural protections set forth in section 10-3-1106. *See id*; *see also* Utah Code Ann. §§ 10-3-1105 to -1106.

D. Pearson's Duties Fit the Definition of Deputy

¶31   The City's organizational chart lists the "assistant chief of police" as second-in-command to the "chief of police."[6] According to a job description revised in 2004, the assistant police chief's duties include "[a]ssum[ing] departmental responsibility in the absence of Chief of Police." Among other duties, the assistant chief "[p]rovides general supervision to all department personnel"; assists in budget preparation, personnel matters, implementing quality control guidelines; "[d]evelops in-house training curriculum"; and "represent[s the] Police Department at public meetings as necessary." While not contesting the City's description of his actual duties, Pearson claims that he never received a written job description. According to Pearson's testimony before the Board,[7] general duties were discussed when he was hired, but South Jordan had not finalized a written job description at that time. In particular, Pearson refers to a letter from the City offering him the position, that states a job description will be provided at orientation, but that "in brief, you will be responsible for Police operations."

¶32   In response, South Jordan relies on the testimony of City Manager Rick Horst, indicating that Pearson "took charge" and "was responsible for all operations of the City in the absence of the chief." Horst further testified that Pearson handled personnel matters, including hiring and firing recommendations, conducting performance

---

6. During Pearson's tenure, the City created a "director of public safety" position to which it elevated the police chief. While this structure was in place, Pearson served as "acting chief" under the director of public safety. Eventually, the City decided to revert to the traditional model, eliminating the director of public safety and reinstating the police chief. At that time, Pearson again became the "assistant police chief" and held that post until his termination.

7. The parties relied on the record from the hearing before the appeals board as support for their cross-motions for partial summary judgment.

evaluations, and making policy decisions. While Pearson did not dispute most of this testimony, he argued at the summary judgment hearing that there was no evidence that he made any policy decisions. However, this factual dispute is not material to our decision because Pearson was not required to make policy decisions in order to perform the duties of a deputy. *See infra* ¶ 33. Based on the undisputed facts, Pearson did not act as a mere assistant, or helper, to the police chief. Despite his title, Pearson had the power to act in place of the police chief and often did so. Therefore, we conclude that Pearson's duties were equivalent to those of a deputy and that South Jordan was not required to make the procedural requirements of section 10-3-1106 available to him.[8]

¶33    Nonetheless, Pearson argues that he was not a "deputy" because he was not authorized to perform every function of the police chief. Aside from the ability to make policy decisions, Pearson has not identified any specific function that he did not have the authority to perform. Furthermore, there is no requirement that a deputy be authorized to perform every function of the principal, so long as he can act in most significant respects in the principal's absence. *Cf. Meyers v. Second Judicial Dist. Court*, 108 Utah 32, 156 P.2d 711, 716 (1945) (noting that under the then-current statute a deputy attorney general's authority to perform the attorney general's functions did not extend to any "duties . . . as a member of any board").

¶34    Pearson further argues that this case is distinguishable from *Kocherhans v. Orem City*, 2011 UT App 399, 266 P.3d 190 (mem.), where Orem provided its employees with notice in its employee manual of whether they were at-will or merit employees. *See id.* ¶ 11. Pearson claims that he had no notice that the City considered him an at-will employee until a meeting with the human resources manager a "couple of days" before his January 30, 2007 termination.[9] And Pearson notes that South Jordan had no formal

---

8. Because we hold that Pearson's position is equivalent to a "deputy police chief," we need not reach the issue of whether Pearson was also "a deputy of a head of a municipal department." *See* Utah Code Ann. § 10-3-1105(2)(g) (2007).

9. Indeed, Pearson asserts that the City impliedly contracted to grant him merit employment status. However, whether South Jordan contractually agreed to provide Pearson with more job security than was required by statute is not at issue in this appeal because the trial court did not grant summary judgment to either party on

(continued...)

list of at-will employees until January 2007.[10] Notwithstanding the absence of his precise job title on the statutory list of positions that could be terminated at-will, Pearson admits that he was aware of his actual job duties. As discussed, these duties included, among other things, "[a]ssum[ing] departmental responsibility in the absence of Chief of Police" and "[p]rovid[ing] general supervision to all department personnel." By performing duties well beyond what would commonly be expected of an assistant or helper, Pearson was on notice that he held a "core leadership position[]" despite his "assistant police chief" title. *See Kocherhans*, 2011 UT App 339, ¶ 10. Thus, Pearson should have known that he was, in fact, serving as a deputy police chief. *Cf. id*; *see generally* Utah Code Ann. § 10-3-1105 (2007).[11]

### III.  Several Issues that Must Be Resolved on Remand

¶35    In an attempt to assist the trial court, we briefly address Pearson's claim that he was contractually entitled to merit status. *See State v. White*, 2011 UT 21, ¶ 34, 251 P.3d 820 (noting that it is appropriate to address issues not before the court on appeal in order to "provide guidance to the trial court on remand"); *see also Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 38, 70 P.3d 35 ("[I]n the interest of judicial economy, 'a brief discussion of [an issue not raised on appeal] is appropriate as guidance for the trial court on remand.'" (quoting *Kilpatrick v. Wiley, Rein & Fielding*, 2001 UT 107, ¶ 55, 37 P.3d 1130)).

---

9.  (...continued)
Pearson's contract claim.

10.  The City began compiling the list in November 2006, but did not finalize and approve it until January 2007.

11.  As a convenience to the reader, we note that shortly before this opinion was issued, the Utah Legislature amended section 10-3-1105 to specifically exempt "assistant" police chiefs from the merit status afforded by section 10-3-1105(1), and also added language indicating that positions that are "equivalent" to those enumerated in section 10-3-1105(2) are also exempt. *See* H.B. 449, 59th Leg. (Utah 2012) (enacted March 22; effective May 8, 2012).

20100446-CA                              15

¶36    Nothing in this decision is intended to suggest that a municipality may not provide more protection than is required to those employees who are exempted from the mandatory process provided in section 10-3-1105(1). *See* Utah Code Ann. § 10-3-1105; *see also Utah Pub. Emps. Ass'n v. State*, 2006 UT 9, ¶ 27, 131 P.3d 208 (acknowledging that public employers can undertake "additional obligations beyond the relevant statutory requirements"). Subsection (1) requires that "each employee . . . *shall* hold employment without limitation of time," unless exempted under subsection (2). *See id.* However, there is no corresponding mandate that employees be treated as at-will if they are included in subsection (2)'s designation of the employees to whom a city is not required to afford merit status. *Compare* Utah Code Ann. § 10-3-1105(1), *with id.* § 10-3-1105(2). Thus, there is no express prohibition against a municipality providing merit protection to a greater number of employees than is required by statute. *See Kocherhans v. Orem City*, 2011 UT App 399, ¶ 7 ("Section 1105 sets up a presumption that most employees of municipalities . . . will be merit employees.").

¶37    Indeed, municipalities are generally free to create rules and regulations "that may potentially create obligations towards employees in addition to those imposed by state law." *Canfield v. Layton City*, 2005 UT 60, ¶¶ 20-21, 122 P.3d 622 (citing Utah Code Ann. § 10-3-815 (2003)). Whether South Jordan agreed to provide merit status to Pearson despite his performance of duties equivalent to that of a deputy police chief is an issue to be determined on remand. To establish such an agreement, Pearson must show that as a consequence of the employment agreement the City voluntarily undertook a duty that it would not have otherwise had. *See Utah Pub. Emps. Ass'n,* 2006 UT 9, ¶ 43; *Canfield*, 2005 UT 60, ¶ 16. Whether such a contract exists is generally "a question of fact which turns on the objective manifestations of the parties' intent," and is "primarily a jury question." *See Cabaness v. Thomas*, 2010 UT 23, ¶ 56, 232 P.3d 486 (quoting *Johnson v. Morton Thiokol, Inc.*, 818 P.2d 997, 1001 (Utah 1991)). However, the trial court may determine, as a matter of law, whether there is sufficient evidence for a reasonable jury to find an implied contract. *See id.* On remand, the trial court should look to "a variety of sources, including the conduct of the parties, announced personnel policies, practices of that particular trade or industry, or other circumstances." *Canfield*, 2005 UT 60, ¶ 17 (emphasis omitted) (quoting *Berube v. Fashion Ctr., Ltd.*, 771 P.2d 1033, 1044 (Utah 1989)).

CONCLUSION

¶38    Pearson performed duties equivalent to those of a "deputy police chief," and therefore, South Jordan was not required to provide him with the procedural protections set forth in section 10-3-1106.  We accordingly reverse the trial court's partial summary judgment in favor of Pearson, and remand to the third district court for entry of partial summary judgment in favor of South Jordan, and for further proceedings to resolve Pearson's remaining claim that the City contracted to treat him as a merit employee.

¶39    Reversed and remanded.


_____

Carolyn B. McHugh,
Presiding Judge


-----


¶40    WE CONCUR:


_____

James Z. Davis, Judge


_____

William A. Thorne Jr., Judge