IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | No. 33827-4-III |
| LEE L. MACKESSY, | ) | |
| fka LEE L. ALLINGER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| RICHARD J. ALLINGER, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — This case illustrates one of the many difficulties that arise when parties dissolve their marriage without the assistance of legal counsel. After hearing testimony, the trial court concluded that the parties had agreed to walk away from the marriage without claiming any interest in the other's potential military pension. As the record supports this determination, the inchoate pension rights were not overlooked property negligently excluded from the dissolution decree. We affirm the trial court's decision to deny partition of the husband's military pension.

FACTS

Lee Mackessy and Richard Allinger met while each was serving in the U.S. Army. They married November 1, 1986. Ms. Mackessy left the army in 1988, the same year the couple's first child was born. Mr. Allinger left the army by the end of 1989; the couple's second child was born in 1992. Mr. Allinger returned to service in the reserves in August 1995.

The parties, each then represented by counsel, filed for dissolution in 1996. They subsequently reconciled for a period of time and halted the dissolution proceedings. Their third child was born in December 1996. The parties, proceeding pro se, instituted a new dissolution action in 1998. There was no written property settlement agreement. Instead, the decree of dissolution entered December 2, 1998, awarded the husband seven named items such as a TV and VCR, along with "everything already taken." Clerk's Papers (CP) at 8. The decree awarded the wife five categories of items, including the family house and furnishings. CP at 8-9. The decree did not recognize any other assets: no bank accounts, insurance policies, retirement plans, or the like were listed in the decree. A separate appendix indicated all of the credit card debt was awarded to the husband, while the wife took the car and house payments. The decree indicated that the parties had no separate property.

The parties occasionally modified the parenting plan over the years. Mr. Allinger's reserve unit was activated for service in Iraq and, after the tragic events of 2001, he went to active duty. Ms. Mackessy spent a brief time in the reserves before ending her service. Mr. Allinger remained in the service and his military retirement vested in 2012. He thereafter took his retirement and also received a disability retirement.

When she became aware of the military retirement income, Ms. Mackessy sued to partition it, claiming 17.5 percent of it as her share of an undivided community asset.[1] After competing motions for summary judgment were denied, the matter eventually proceeded to trial. Both parties testified that they earned "points" toward military retirement benefits while in the active service and in the reserves, and each was aware that both of them had accumulated points during the marriage. Mackessy testified that the topic of the retirement points had not been discussed during the marriage, while

---

[1] The calculation does not add up. The original motion for summary judgment incorrectly claimed that 92 months of the pension time were acquired during the marriage. CP at 40. It appears that during the marriage, Mr. Allinger was a service member for the period of November 1, 1986 to December 31, 1989 (38 months), and again from August, 1995 to the date of final separation on July 1, 1998 (35 months). CP at 17. However, community property is not acquired when the parties are living separate and apart. RCW 26.16.140. Based on trial testimony, there was a four to six month period in 1996 that also should be subtracted from that total. However, one exhibit used at trial, but not provided on appeal, suggests the parties had a different document from which the military retirement points were calculated. *E.g.*, Report of Proceedings at 133, 139 et seq.

3

Allinger testified that they had decided to each keep their own points and walked away from the other's points since neither anticipated serving sufficiently long to obtain a military retirement. Mr. Allinger testified that the couple had talked about it during the dissolution and again several years later when he decided not to seek support from Mackessy during a time when he had custody of all three children.

The trial judge rejected the motion to partition the retirement benefit and found no basis to award attorney fees to either side. The court entered findings of fact largely consistent with Allinger's testimony. The court concluded that the parties had discussed the retirement benefit and had agreed to leave each with their own points, largely because no one believed they would ever amount to anything. The court concluded that Ms. Mackessy had waived any interest in her ex-husband's possible pension, and that the doctrine of laches would also bar recovery. In support of its reasoning, the court noted that numerous other items were divided by the parties, but not listed in the decree of dissolution.

Ms. Mackessy then timely appealed to this court.

## ANALYSIS

Ms. Mackessy presents three arguments on appeal, but we believe they are really only two. Accordingly, we address first the dispositive issue that we believe is present in

4

this case—is the failure to list an item of property in a dissolution decree conclusive evidence that it is an overlooked community asset subject to later division by a court? We answer that question in the negative. We also conclude that substantial evidence supports the determination that Ms. Mackessy waived her right to any future pension benefits.

*Were the Retirement Credits Overlooked*

Ms. Mackessy argues that the trial court erred in finding that she had "no valid, legal theory" supporting her argument and that the failure to list the retirement in the decree means that it is an overlooked asset as a matter of law. The trial court did not err.

The law governing division of marital assets and community property is primarily statutory and the general principles have long been settled. In a dissolution, all property, separate or community, is before the court for distribution. RCW 26.09.080. A property settlement entered into by the parties is binding on the court unless it finds the agreement unfair at the time of execution. RCW 26.09.070(3). Similarly, during the marriage the parties are free to dispose of their interests in community or separate property, including changing the characteristics of the property. RCW 26.16.030, .050, .120.

In the event that community property is not called to the attention of the court during a dissolution and, thus, not awarded to either party, the property is held by the former couple as tenants in common. *Chase v. Chase*, 74 Wn.2d 253, 257-258, 444 P.2d 145 (1968), *overruled on other grounds by Aetna Life Ins. Co. v. Wadsworth*, 102 Wn.2d

No. 33827-4-III
*Mackessy v. Allinger*

652, 689 P.3d 46 (1984). However, the question of whether an asset is "overlooked" is not one which has attracted much attention in the case law. We thus turn to that question.

First, however, some preliminary comments are in order. Ms. Mackessy repeatedly argues that the military *pension* was an overlooked asset at the time of the decree. It was not. The pension right was not vested in either the husband or the wife, and neither expected to stay in the military long enough to obtain a pension. The property right at issue was the community's interest in the pension credits (points) accumulated during the marriage. As those credits were earned during the marriage, they were community assets. That is the item of community property at issue here.

An additional preliminary matter concerns the trial court's determination, later reduced to writing, that there was "no valid, legal theory" supporting the argument for partition. CP at 179. Ms. Mackessy argues that this statement indicates that the judge did not believe he had any basis on which to grant her claim for relief and asks that we remand for a new hearing since partitioning of an overlooked asset is permissible. This argument is an overreaction to what is, at most, use of colloquial language that is erroneously treated as a term of art. The trial court did not make the statement in response to a motion for judgment as a matter of law under CR 12(b)(6). It came during the summation of the evidence in the course of ruling at the conclusion of a bench trial. The statement simply reflected the judge's conclusion that petitioner did not have a winning case. It did not reflect a misunderstanding of his authority to entertain her

6

request. The language may have been imprecise in context, but it was nothing more than recognition that plaintiff did not have a winning argument.

With those preliminaries aside, it is time to turn to the actual issue presented—what constitutes an overlooked asset for purposes of the distribution of property during a dissolution? The most instructive case is *In re Marriage of Knight*, 75 Wn. App. 721, 880 P.2d 71 (1994), *review denied*, 126 Wn.2d 1011 (1995). There the parties had entered into a written property settlement agreement that gave the family business to the wife; the couple believed that the business had no value. *Id.* at 724-725. After the dissolution, the business prospered greatly and the husband moved to set aside the agreement due to undue influence and concealment of assets. *Id.* at 724. The trial court found the claims unproven, but sua sponte determined that the parties had not understood the concept of "goodwill," valued the goodwill of the business, and awarded half of that figure to the husband as an overlooked asset. *Id.* at 725. This court reversed that ruling after pointing to evidence developed at the hearing that the parties understood and discussed all of the factors that constituted goodwill, even though they did not understand that word's technical meaning as an accounting concept. *Id.* at 726-727. Accordingly, the parties "possessed and considered the information necessary to value all the component parts of the business." *Id.* at 728. The fact that they erroneously valued the business was not a basis for reopening the agreement. *Id.*

This case is in a very similar posture. Although there was no written agreement, the parties in both cases discussed their property settlement and sought to resolve all issues. Unlike the Knights, the parties here did not detail all of the property they were distributing to each other. As noted previously, there is no indication that the parties had any bank accounts to distribute, whether as either separate or community property, but they actually did. The dissolution decree indicates that neither party had any separate property, but, again, they clearly did. Each agreed, for instance, that Ms. Mackessy got to keep her jewelry and Mr. Allinger got to keep his musical instruments, including a piano and a guitar. Although it was not listed among the debts distributed to the wife, both of them agreed that Ms. Mackessy undertook responsibility for her student loan. Both agreed that Mr. Allinger was paid $6,000 to buy out his interest in the equity in the house awarded to Ms. Mackessy. However, nothing in the decree indicates that was to be done. There are many other examples found in the testimony of the parties. It was undisputed that the decree did not list all assets owned by the parties or indicate how they were distributed. If the pension points were an overlooked asset, so were many other items.

Like *Knight*, the trial judge here heard evidence whether the pension points were an overlooked asset or not. While whether they discussed the points was a matter of dispute, eventually resolved at trial in the husband's favor, it is undisputed that both knew about the military pension points each had earned during the marriage. Both were aware how military pensions worked. Both knew that the points had value if either of them

8

were to continue with the military and obtain a pension. In short, as in *Knight*, they "possessed and considered" the relevant information. The pension points were not an overlooked asset.

The trial court correctly determined that the parties knew about the pension points and had agreed among themselves to leave each person his or her own points. In accordance with the analysis in *Knight*, they were not an overlooked community asset.

*Sufficiency of the Evidence to Support Findings*

The final issue is whether the evidence supported the trial court's findings concerning the pension points. It did.

This court reviews challenges to factual findings for substantial evidence. *Clark v. Clark*, 72 Wn.2d 487, 492, 433 P.2d 687 (1967). Substantial evidence exists if the evidence is sufficient to persuade a fair-minded rational person of the truth of the evidence. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Appellate courts do not find facts and cannot substitute their view of the facts in the record for those of the trial judge. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959). Accordingly, the presence of conflicting evidence does not prevent evidence from being "substantial." *E.g.*, *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

Ms. Mackessy challenges the findings that she waived her rights to the pension points and that the doctrine of laches would also bar recovery. Because the evidence

9

supports the waiver conclusion, we need not address laches.[2] Ample evidence supports the findings upon which the waiver determination rests.

It is undisputed that both parties were serving in the military at the time they married and both were serving in the reserves at the time the marriage ended. They were familiar with how military pensions worked and that the points earned during the marriage would be useful toward eventually earning a military pension. Mr. Allinger testified that they had discussed the points while working out the property division. They assigned no value to the assets since neither intended to make the military a career. Accordingly, each left the marriage with their own points and no claim on the other's points. As trier of fact, the trial court was free to credit that information.

The evidence in the record supports the trial court's findings, which in turn support the determination that the parties each waived any claim on the pension points earned by the other during the marriage. The trial court did not err in denying the motion to partition the husband's military pension.

---

[2] The laches ruling is understandable. Since property must be distributed equitably, it is arguably unfair to go back to just one piece of the property distribution scheme without considering all of the assets that were distributed without being identified in the decree. A trial judge likely would have a difficult time valuing and awarding assets at this late time, especially since some of them (such as the house) are no longer held by either party. The trial court could reasonably determine that it would be inappropriate or impossible to fairly divide the 1998 property holdings in 2015.

No. 33827-4-III
*Mackessy v. Allinger*

The judgment is affirmed. We exercise our discretion and decline to award either

party their attorney fees in this court.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Korsmo, J.

I CONCUR:

Lawrence-Berrey, J.

11

No. 33827-4-III

FEARING, C.J. (concurring) — I write separately because, although I agree with the

majority's conclusion, my analysis emphasizes other facts, factors, and principles.

Paragraph 3.2 of the 1998 marital dissolution decree between Lee Mackessy and

Richard Allinger reads:

> [X]  The husband is awarded as his separate property the following
> property (list real estate, furniture, vehicles, pensions, insurance, bank
> accounts, etc.):
>> Chevy Blazer
>> Piano
>> love seat
>> Stereo
>> VCR
>> t.v.
>> boat
>> everything already taken

Clerk's Papers (CP) at 8.  Paragraph 3.3 of the decree contains a similar provision for the

wife, Lee Mackessy, without the language "everything already taken."  CP at 8.  Richard

Allinger does not contend on appeal that the language "everything already taken"

included his taking of his full pension rights.  The dissolution decree does not otherwise

expressly address the disposition of other assets and liabilities.  The decree makes no

mention of either party accruing a military retirement pension.

The trial court found that Lee Mackessy and Richard Allinger knew, at the time of the 1998 marriage dissolution, that the other was accumulating time toward a military retirement pension. The trial court further found that the parties agreed that each would own the entire rights to his or her pension. In other words, both Mackessy and Allinger agreed that she or he would not later assert an interest in the other's pension.

Lee Mackessy does not assign error to the trial court's finding of fact 2.28 that both Richard Allinger and she agreed to keep his or her own military pension rights. Mackessy assigns error to the trial court's finding that their respective legal counsel, during an earlier divorce proceeding, disclosed and discussed military pension rights. This assignment is immaterial, however, to whether Lee Mackessy knew of pension rights through other means or whether the parties agreed to forego an interest in the other's pension rights. Since Mackessy does not assign error to the finding that the parties reached an agreement with respect to pension rights, this finding is established as truth on appeal.

RAP 10.3(g) reads, in relevant part:

> A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

Unchallenged findings of fact are verities on appeal. *In re Marriage of Brewer*, 137 Wn.2d 756, 766, 976 P.2d 102 (1999); *Cascade Valley Hospital v. Stach*, 152 Wn. App. 502, 507, 215 P.3d 1043 (2009).

On appeal, Lee Mackessy relies on the longstanding Washington rule that community property of the spouses not disposed of by a divorce decree vests equally in the parties as tenants in common. *Yeats v. Estate of Yeats*, 90 Wn.2d 201, 206, 580 P.2d 617 (1978); *Chase v. Chase*, 74 Wn.2d 253, 257-58, 444 P.2d 145 (1968); *Pittman v. Pittman*, 64 Wn.2d 735, 737, 393 P.2d 957 (1964); *Olsen v. Roberts*, 42 Wn.2d 862, 864, 259 P.2d 418 (1953); *Ambrose v. Moore*, 46 Wash. 463, 466, 90 P. 588 (1907); *In re Marriage of Monaghan*, 78 Wn. App. 918, 929, 899 P.2d 841 (1995); *In re Marriage of de Carteret*, 26 Wn. App. 907, 908, 615 P.2d 513 (1980); *Seals v. Seals*, 22 Wn. App. 652, 655, 590 P.2d 1301 (1979); *Martin v. Martin*, 20 Wn. App. 686, 688, 581 P.2d 1085 (1978). This rule of tenancy in common applies to retirement fund benefits. *Chase v. Chase*, 74 Wn.2d at 258; *Pittman v. Pittman*, 64 Wn.2d at 737-38; *In re Marriage of de Carteret*, 26 Wn. App. at 908. Although military retirement benefits may not be characterized as community property under federal law, the Uniformed Services Former Spouses' Protection Act allows a Washington court to treat the retirement fund as if it is community property and award up to half of the disposable retirement pay to the nonmilitary spouse. 10 U.S.C. § 1408; *In re Marriage of Smith*, 100 Wn.2d 319, 323, 669 P.2d 448 (1983).

The majority phrases the issue on appeal as being whether a failure to list an item of property in the dissolution decree renders the item an "overlooked" community asset subject to later division of a court? Majority at 5. None of the Washington decisions use the term "overlooked." Instead all decisions, except one, focus on how to handle

3

property "undisposed" in the divorce decree, and the other decision references addressing property "unadjudicated." *Ambrose v. Moore*, 46 Wash. at 466 (1907). "Overlooked" carries a different meaning from "undisposed" and "unadjudicated." We stray from precedence by asking whether Lee Mackessy and Richard Allinger "overlooked" the military pensions.

Richard Allinger does not dispute that the dissolution decree failed to expressly dispose of the parties' respective and prospective retirement benefits. The question this court then faces is whether a later court may enforce an oral agreement between divorcing spouses when the dissolution decree fails to confirm the agreement. No Washington decision directly addresses this issue. None of the cases that apply the tenants in common rule involve facts where the divorcing parties agreed outside of the dissolution decree to dispose of assets. I conclude based on tangential principles of law and foreign decisions that a court should enforce such an oral agreement.

Idaho maintains a statute that requires all contracts for marriage settlements be in writing and signed. Idaho Code § 32-917. No Washington statute precludes the enforcement of an oral agreement between spouses either before or during a marital dissolution proceeding. RCW 19.36.010(3) requires a writing for agreements made on consideration of marriage, but not on consideration of divorce or separation.

A conveyance between spouses of community real property should be by deed. RCW 26.16.050. But no statute addresses a conveyance of an intangible community asset, such as an interest in a pension. RCW 26.09.070 allows parties to a marriage to

4

enter a "written" separation contract providing for the maintenance of one of them and disposition of property. The statute assumes that the parties will not immediately divorce. It provides no answer as to the enforcement of oral agreements pending the severing of bonds of matrimony. RCW 26.09.080 impliedly directs the trial court, in a marriage dissolution proceeding, to dispose of all community and separate property of the spouses, but the statute does not provide a remedy for a failure to dispose of all assets. Nor does the statute preclude the parties from agreeing outside of the divorce decree to a disposition of some of their assets. The parties are not required to place all agreements into the dissolution decree.

People are generally free to bind themselves to any contract, barring illegality of subject matter or legal incapacity. *Fosmo v. Department of Personnel*, 114 Wn. App. 537, 540, 59 P.3d 105 (2002); *Howick v. Salt Lake City Corp.*, 2013 UT App 218, 310 P.3d 1220, 1227. Generally, people have the right to make their agreements entirely oral, entirely in writing, or partly oral and partly in writing. *Barber v. Rochester*, 52 Wn.2d 691, 698, 328 P.2d 711 (1958); *Lopez v. Reynoso*, 129 Wn. App. 165, 171, 118 P.3d 398 (2005). Parties to a settlement are free to enter into a binding oral contract without memorializing their agreement in a fully executed document, even if they intend to subsequently reduce their agreement to writing. *Willey v. Willey*, 2006 VT 106, 180 Vt. 421, 426, 912 A.2d 441.

A writing helps to impress on the parties the importance of the agreement. At the same time, we wish to encourage settlements and finality of agreements even when settlements are not reduced to writing.

In the following cases, foreign courts enforced an oral agreement reached by divorcing parties. *Willey v. Willey*, 2006 VT 106, 180 Vt. 421, 912 A.2d 441; *Cain v. Swiderski*, 864 So. 2d 549 (Fla. Dist. App. 2004); *In re Marriage of Sherrick*, 214 Ill. App. 3d 92, 573 N.E.2d 335 (1991); *Silva v. Silva*, 467 So. 2d 1065 (Fla. Dist. App. 1985). More examples could be given. In each decision, the parties or the court after a hearing incorporated the agreement into the dissolution decree. Nevertheless, I see no reason to distinguish between an agreement incorporated into a decree and an agreement never memorialized in writing as long as the proponent of the oral agreement carries the burden of proving its existence.

Contrary to the majority, I do not consider *In re Marriage of Knight*, 75 Wn. App. 721, 880 P.2d 71 (1994), helpful. The decision's subject is Yelm's world famous channeler of Ramtha, but this court merely enforced an agreement memorialized in writing.

The Washington decision most apt is *Wagers v. Goodwin*, 92 Wn. App. 876, 964 P.2d 1214 (1998). Virgil Goodwin and Chong Lon Wagers obtained a divorce decree without legal representation. Although Goodwin served in the Army during the entire length of the marriage, the dissolution decree made no reference to his military pension. Seven years later, Wagers sued for partition and distribution of the pension. She relied

6

on the rule that property not distributed by decree remains an asset held by both divorcing parties as tenants in common. Evidence showed that Wagers knew, at the time of the dissolution, of the pension. During settlement negotiations, she stated she did not want a part of the pension and desired other property instead. The court estopped Wagers from acquiring rights in Goodwin's military pension. If Wagers is estopped by knowing of her former husband's pension and declining an interest therein during settlement talk, a court should enforce an agreement between separating spouses that each party retains full interest in his or her retirement fund regardless of whether the dissolution decree integrates the agreement.

Richard Allinger also contends that this court should apply equitable estoppel, waiver, and laches to preclude Lee Mackessy from obtaining an interest in his military retirement fund. The majority also holds that Lee Mackessy waived any right to Richard Allinger's pension benefits. Nevertheless, the majority does not list the rules of waiver or analyze the application of the waiver doctrine. I question whether the doctrine applies. Since the appeal can be resolved solely on the basis that the parties disposed of the military retirement benefits by oral agreement, I would avoid holding that waiver precludes recovery for Mackessy.

_____
Fearing, C.J.

7